FUTERNICK *v.* CUTLER.

1. COURT COMMISSIONERS—ORDER OF REFERENCE—ACCOUNTING.

Defendant's claim that order of reference to the circuit court commissioner was not proper in suit for accounting *held*, without merit, where case was tried by capable lawyers over a long period of time, no objection was heard from defendant at the time of the reference or during the 2 months of hearings that the order of reference was not being followed, or that defendant was being precluded or limited in the presentation of his proofs.

2. ACCOUNTING—FINDING OF CIRCUIT COURT COMMISSIONER—EVIDENCE.

Finding of circuit court commissioner and confirmation thereof by the circuit court that plaintiff was entitled to amount

REFERENCES FOR POINTS IN HEADNOTES
[1] 1 Am Jur, Accounts and Accounting § 61.
[2, 3] 3 Am Jur, Appeal and Error § 912.

allowed in suit for accounting as to certain business enterprises entered into between plaintiffs and defendant *held,* supported by ample evidence in the record.

3. Appeal and Error—Chancery Cases—Findings—Evidence.

The Supreme Court tries chancery cases *de novo* but gives great weight to the findings of the trier of the facts, particularly where there is conflict in the testimony, and will not substitute its judgment for that of the trier of the facts where it cannot say that if it were in his position it would have arrived at a different conclusion.

Appeal from Wayne; Bowles (George E.), J. Submitted January 14, 1959. (Docket No. 70, Calendar No. 47,822.) Decided April 13, 1959, Rehearing denied June 5, 1959.

Bill by Ralph Futernick and Atlas Industries, Inc., a Michigan corporation, against Abraham J. Cutler for accounting, attacking former settlement as being based on fraud and misrepresentation. Cross bill for accounting as to various matters involved in joint ventures. Reference to circuit court commissioner whose findings and recommendations result in decree for plaintiffs. Defendant appeals. Affirmed.

*Dickinson, Wright, Davis, McKean & Cudlip* (*Glenn D. Curtis,* of counsel), and *Kahn & Kahn* (*Kenneth Kahn,* of counsel), for plaintiffs.

*Harold Goodman* and *Steven E. Goodman,* for defendant.

Kavanagh, J. Ralph Futernick and Atlas Industries, Inc., plaintiffs, filed a bill of complaint seeking an accounting concerning business enterprises entered into by Futernick, Atlas, and defendant Cutler.

Atlas is a Michigan corporation, whose president and sole stockholder was Futernick. Three separate business deals were involved:

(1) The Oklahoma deal—which was the purchase

and resale of the surplus scrap of a bankrupt in Oklahoma.

(2) The California metals transaction—which was the purchase of scrap metals and their resale in California.

(3) The Lake City Paper enterprise.

In all of these transactions, Futernick provided the business opportunity, the direction, and some money. Cutler provided substantial additional funds evidenced both by notes and by cancelled checks.

It would appear that on occasion Cutler considered the various enterprises as a joint venture or as a loan, as convenience dictated.

In the early part of 1949, defendant Cutler commenced making a series of loans at the request of Futernick to Atlas Industries, Inc. A blanket mortgage to secure advances up to $35,000 was given. In 1950, Futernick secured some personal advances from Cutler. At about this same time, Futernick, as the sole stockholder and president, incorporated a business in California known as California Metals Corporation. Cutler advanced to it at different times sums amounting to $25,000, apparently with a view of acquiring an interest in the business if the investment seemed desirable. At about the same time, Cutler advanced to Futernick $13,500 to permit the latter to purchase a bankrupt stock of war-surplus merchandise, with the understanding that they were to share the profits equally.

In August, 1950, Cutler decided he would not invest in California Metals Corporation, and Futernick caused to be given Cutler a note and a third mortgage on the Atlas premises for $31,500. Difficulty arose between the two, and on August 28, 1951, the parties entered into an agreement that the amount of the indebtedness to Cutler was $80,500. $66,000 was paid, the mortgages were discharged,

and a note was given by Atlas Industries, Inc., for $14,500 payable in another year.

Futernick claims he signed the settlement agreement only after Cutler promised to produce the evidence, including certain checks, that would indicate that the gross funds advanced by Cutler equaled $80,500, it being Futernick's contention that because of stoppage of payment on one check on or about May 17, 1950, in the amount of $5,000, and the inability to cash a check dated June 23, 1950, in the amount of $5,000, because of insufficient funds, this figure of $80,500 is erroneous. Futernick subsequently paid $4,500 on the principal and $560 interest on the $14,500 settlement note. On discovery of the 2 checks mentioned, Futernick refused to pay the balance.

Defendant Cutler brought suit by attachment in the Macomb county circuit court. Plaintiffs then filed this bill in the Wayne circuit court for an accounting, alleging that there had been a mistake in the settlement agreement, and that Futernick had actually overpaid defendant Cutler. Plaintiffs asked for a decree in their favor in the amount of the overpayment.

Defendant answered, denying the fact the $80,500 was not a proper sum. Defendant filed a cross bill urging that the settlement be affirmed, and, also, seeking a decree, in addition, for certain bonuses that had been promised him which had been overlooked in the settlement agreement. Cutler's answer denied all allegations of misconduct.

When the case came on for pretrial conference the cause was referred to a circuit court commissioner for the taking of proofs with respect to the property interests of these parties. Proofs were taken over approximately a 2-month period, and a lengthy record was made. At the conclusion of proofs, plaintiffs submitted to the commissioner plaintiffs' pro-

posed findings of fact and conclusions of law. Defendant also presented a proposed statement of facts and law. The commissioner made findings of fact, conclusions of law, and recommendations, which were as follows:

"This is an action for accounting by Ralph Futernick, hereinafter referred to as (Futernick) and Atlas Industries, Inc. (Atlas), against Abraham J. Cutler (Cutler) concerning certain business enterprises entered into by Futernick, Atlas and Cutler. Atlas is a Michigan corporation, whose president and sole stockholder was Futernick. Atlas operated at the whim of Futernick in an informal manner, and certain funds advanced by Cutler passed through Atlas to Futernick into enterprises agreed upon by Cutler and Futernick. In the course of such financing arrangements, Atlas gave certain mortgages on its funds advanced by Cutler for the purpose of carrying out the various business enterprises.

"There were 3 separate business enterprises involved:

"A. The Oklahoma deal—which was the purchase and resale of the surplus scrap of a bankrupt in Oklahoma.

"B. The California metals transaction, which was the purchase of scrap metals and their resale in California.

"C. The Lake City Paper enterprise.    *   *   *

"In all of these transactions, Futernick provided the business opportunity, the direction, and some money; Cutler provided substantial additional funds secured both by notes and also evidenced by both cancelled checks and checks back parallel to the notes, making it possible to regard the enterprise, both as a joint venture or as a loan, as convenience dictated. It was also the practice of Cutler to have an associate, (either a relative or an accountant) who was paid from the enterprise, in a position to control the operation and protect Cutler's interests.

*"Findings of Fact*

"1. That moneys advanced by Cutler were in many instances evidenced by both a check back to Cutler in like amount, and a note.

"2. That in the accounting and settlement made by the parties as of August 28, 1951, defendant Cutler represented that certain funds advanced by Cutler grossed $80,500—whereas in fact because of the practice described in finding Number 1 above and because of the stoppage of payment and inability to cash certain checks issued by Cutler, this figure of $80,500 is erroneous, and was wrongfully used by defendant Cutler as a settlement figure.

"3. That the promissory note in the amount of $14,500 given to Cutler by Atlas Industries, Inc., was in fact based on the erroneous settlement of August 28, 1951.

"4. That while in form, many of the transactions between Cutler and Futernick were made in the name of Atlas Industries, Inc., they were in fact transactions between Cutler and Futernick, the name of Atlas Industries, Inc., being a mere conduit for the purpose of obscuring the violation of the usury statutes of the State of Michigan.

"5. That the transactions between Futernick and Cutler, while rigged with the attributes of both a joint venture and a loan, were in fact joint ventures and Cutler, by retaining control of the funds and the management through relatives, accountants and pursestrings, exercised the major share of proprietory control. This proprietory interest is not disturbed by the 'heads-I-win, tails-you-lose' arrangement, whereby Cutler could claim a loan if the venture failed, but not only share in the profits if the venture was a success but perhaps for tax purposes draw out those profits in a manner which appeared to be return of capital.

"6. That there were no agreements to pay a bonus if these joint ventures failed, as they failed here, to show a profit.

"7. That the bonus alleged by defendants* was a part of the method whereby if there was a profit, Cutler could withdraw his share, as return of capital.

"8. That the Oklahoma transaction was entered into between Futernick and Cutler with the understanding that if all went well, Cutler would share the profits 50/50.

"9. That the California Metals venture was entered into between Futernick and Cutler with the understanding that if all went well, the profits would be shared 2/3 to Futernick and 1/3 to Cutler.

"10. That by subsequent agreements, the Oklahoma venture was converted from a 50/50 joint venture to a loan by Cutler to Futernick as his sole account.

"11. That subsequently by the agreement of August 28, 1951 (see exhibit 1) Futernick and Cutler converted the California Metals transaction from a joint venture to a straight loan from Cutler to Futernick.

"12. That Cutler has not sold or otherwise defrauded Futernick by disposing of any assets of the California Metals transaction.

"13. That the note (exhibit 11) given August 28, 1951, in the amount of $14,500 was collateral to the agreement (exhibit 1) of even date and was predicated upon an indebtedness which totaled $80,500 including 2 checks upon which funds were never paid: One check, dated May 17, 1950, in the amount of $5,000 upon which payment was stopped; One check, dated June 23, 1950, in the amount of $5,000 which was returned for insufficient funds.

"14. That with the exception of the 2 delivered $5,000 Cutler checks, the settlement agreement of August 28, 1951, had taken into account all interest payments and bonuses, as well as settlement in full of the Oklahoma and California Metals transactions

---

* Apparently the commissioner had the interest of defendant's wife in mind. She had signed several checks and joined in some of the agreements, and certain of the notes and mortgages bore her name. There was only 1 defendant in this suit, Abraham J. Cutler.

including the withdrawals by Cutler from the Ralph Futernick Company account.

"15. Subsequent to the agreement and note of August 28, 1951, Futernick caused to be paid $5,060 on the $14,500 note as of October 11, 1952, of which $560 was called interest and $4,500 principal.

"16. That the payment of $5,060 on October 11, 1952, was in excess of the $4,500 principal and $201.50 interest then due, and an overpayment of $358.50.

"17. That Futernick knew, or could have known, at all times, and particularly prior to the August 28, 1951, settlement, the exact profit or loss portion of both the California Metals and Oklahoma transactions, and if he failed to properly record and keep this knowledge within his control, it was not the fault of A. J. Cutler.

"18. That the losses incurred in the various transactions—Oklahoma and California Metals were not the fault of Cutler or Futernick.

"19. That the testimony and evidence in regard to the Oklahoma transaction indicate that when this was a 50/50 joint venture, losses were sustained, and thereafter when there were insufficient funds in the venture account (the account of Ralph Futernick Co.), Cutler withdrew funds from this account in excess of the venture funds, thus drawing on the personal funds of Ralph Futernick, but it further appears that these facts were known, and the items accounted for at the time the transaction was converted from a joint venture to a loan from Cutler to Futernick, thus any liability by Cutler to Futernick was merged with other transactions.

"20. That Cutler invested $13,500 in the Oklahoma deal which were expended on that transaction which was a losing venture, and in the windup of the Oklahoma deal, Cutler withdrew personal funds of Ralph Futernick from the Ralph Futernick Company account.

"21. That the agreements of Futernick to convert the Oklahoma and California Metals transactions into loan from joint ventures were complete and exe-

cuted at the time of completion of the August 28, 1951, accounting and settlement agreement.

"22. That Cutler agreed to loan $3,500 to the Lake City Paper Stock Company and in return, the Lake City Paper Stock Company issued a check in like amount to Cutler. The check was issued on Cutler's promise to deposit $3,500 to the Lake City account. When the money was not deposited to the Lake City account, the check was cancelled, and the entire transaction appears to cancel itself.

"23. The evidence in this accounting, because of the lack of records, frequent unsupported cash payments and unorthodox approach of the parties, depended largely on testimony of 3 witnesses, A. J. Cutler, Ralph Futernick (both parties) and Maurice Mackey, the accountant. As this is a civil matter, your commissioner was not particularly concerned with the niceties involved. The testimony of Ralph Futernick and Maurice Mackey was largely sustained by collateral evidence. The testimony of A. J. Cutler was frequently in contradiction and inaccurate. From observation of the witnesses and for the above reasons, your commissioner therefore, finds the testimony of A. J. Cutler unreliable.

## *"Conclusions of Law*

"Based upon the above findings of fact, your commissioner finds as a conclusion of law:

"24. That as of August 28, 1951, when exhibit 1 was executed and $66,000 paid to Cutler, the indebtedness to Cutler was $70,500 not $80,500 as recited in exhibit 1.

"25. That by reason of the indebtedness being but $70,500 as of August 28, 1951, the note of $14,500 is erroneous and should be reformed and reduced to the correct amount of $4,500 with interest at 4% from August 28, 1951.

"26. That the overpayment of $358.50 made to Cutler, is a refund due to Futernick.

"27. That the law action by writ of attachment in Macomb county is without basis, as the note and

obligations on which it is based, are completely repaid with interest in full, and such action should be enjoined and dismissed.

"28. That there is no adequate remedy to the law action in Macomb circuit, except in equity, as herein alleged.

"29. That the cross bill of the defendant and cross plaintiff, A. J. Cutler, should be dismissed with such costs and attorney fees as to the court doth seem just.

### "*Recommendations*

"Based upon the above findings of fact and conclusions of law, your commissioner recommends that a decree be entered providing:

"30. That the law action in Macomb county be dismissed.

"31. That the defendant, Abraham J. Cutler, be permanently enjoined from proceeding with said law action or bring any other action on the note for $14,-500 given by Atlas Industries, a Michigan corporation.

"32. That Abraham Cutler give up and surrender the note of Atlas Industries, dated August 28, 1951, in the amount of $14,500.

"33. That Ralph Futernick have judgment against Abraham Cutler in the amount of $358.50 together with interest thereon from October 11, 1952.

"34. That the court allow such costs and attorney fees to Ralph Futernick and Atlas Industries as it doth seem just."

Exceptions to the referee's findings of fact and conclusions of law were filed by defendant. A statement was made by plaintiffs in regard to the referee's findings, conclusions, and recommendations, stating, in substance, they were not going to disagree with them, however, they felt the proofs showed they should have a larger sum awarded to them.

On January 29, 1958, the circuit court entered a decision confirming the findings of fact and conclu-

sions of law of the circuit court commissioner. Defendant Cutler then made a motion to dismiss the bill of complaint, claiming that the plaintiffs' case was completely lacking in equity, without merit, and that their claims were utterly false, alleging that certain privileged papers were being concealed by plaintiffs, and alleging that the findings of the circuit court commissioner were erroneous. This motion was denied. Defendant then filed, on May 22, 1958, his objections to entry of the decree confirming the commissioner's report. Decree was entered May 22, 1958, in substance confirming the findings of fact, conclusions of law, and recommendations made by the circuit court commissioner.

Defendant appeals, raising the first question: "Does the evidence sustain a proper basis for opening the settlement and crediting plaintiffs in the amount of $10,000?" Secondly: "Does the record show (a) that the lender did advance the cash amount of $5,500, and (b) if so, does equity require that plaintiffs repay it?" After stating these questions as the 2 questions involved on appeal, defendant then proceeds to discuss in his brief numerous other questions, including one as to whether the reference to the circuit court commissioner was proper. This last question we will dispose of first.

The trial judge, after listening to the arguments of the parties on numerous occasions, as well as reviewing the proposed findings of facts and conclusions of law, evidently came to the conclusion that the report made by the commissioner was in compliance with the order of reference. On the record before us, we think that conclusion was fully justified. The case was tried by capable lawyers over a long period of time. No objection was heard from defendant's counsel at the time of the reference or during the hearings that the order of reference was not being followed, or that defendant was being

precluded or limited in the presentation of his proofs. The length of the record seems to indicate otherwise. No merit exists in this argument. *Randall* v. *Kehoe,* 333 Mich 24. Certainly there is ample evidence in the record to support the findings made by the circuit court commissioner, and confirmed by the circuit court itself.

While this Court tries chancery cases *de novo,* it gives great weight to the findings of the trier of the facts, particularly where there is conflict in the testimony. The circuit court commissioner was in a far better position to determine the truth of the facts than is this Court based upon the printed appendices and briefs. He observed the witnesses testify, had an opportunity to see their demeanor on the witness stand, and, in this particular case, made a finding that the testimony of Abraham J. Cutler was frequently in contradiction and inaccurate, and "from observation of the witnesses and for the above reasons, your commissioner therefore, finds the testimony of A. J. Cutler unreliable." Under circumstances such as these this Court will not substitute its judgment for that of the trier of the facts. We cannot say that, if we were in his position, we would have arrived at a different conclusion.

We affirm the decree of the lower court. Plaintiffs-appellees may have costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.