KELLER v. TOWNSHIP OF FARMINGTON.

1. TOWNSHIPS—ZONING ORDINANCE—TEMPORARY RUBBISH DUMP—
   FILLING OF MARSHY AREA.
   The filling of a pest-breeding, marshy area on plaintiff's com-
   mercially and residentially zoned 508' by 528'–641' tract of
   land adjoining winding river with dry rubbish from sanitary
   department of nearby city in estimated 2-year period and
   which is ultimately to be covered with dirt when filled *held*,
   not to constitute a commercial dump proscribed by township
   zoning ordinance.

2. INJUNCTION—ENFORCEMENT OF TOWNSHIP ZONING ORDINANCE—
   RUBBISH DUMP—FILLING OF MARSHY AREA.
   Injunction was a proper remedy for plaintiff property owner to
   seek for relief against enforcement by township officers of
   township zoning ordinance in such a way as to prevent her
   from filling pest-breeding, marshy area along river with dry
   rubbish from nearby city.

3. APPEAL AND ERROR—DE NOVO HEARING OF EQUITY CASES.
   The Supreme Court hears equity cases *de novo* on the record but
   gives considerable weight to the findings of the trial court
   since he is manifestly in a more advantageous position to
   determine disputed questions of fact.

4. TOWNSHIPS—ZONING ORDINANCE—FINDING OF TRIAL JUDGE.
   Trial court's determination that township zoning ordinance was
   unreasonable and confiscatory as applied to the present con-
   dition of plaintiff's marshy property along a winding river,
   made after an extensive hearing and a personal visit to the
   marshy premises, *held*, not erroneous.

---

REFERENCES FOR POINTS IN HEADNOTES
[2]  28 Am Jur, Injunctions §§ 182, 189.
[3]  3 Am Jur, Appeal and Error § 912.
[5]  42 Am Jur, Public Administrative Law § 243 *et seq.*
[8]  58 Am Jur, Zoning § 21.

5. MUNICIPAL CORPORATIONS—ADMINISTRATIVE BOARD—FINDINGS OF FACT—JUDICIAL REVIEW.

A court may not interfere with the substantiated finding of fact of a municipal administrative board, but must review the facts to reach a determination that the board had a reasonable basis for making its finding.

6. INJUNCTION—RUBBISH DUMP—FILL IN OF MARSH—EVIDENCE.

Evidence presented in suit to enjoin township officers from interfering with plaintiff's proposed fill of her marshy land along winding river by dry rubbish from sanitation department of nearby city *held,* to support trial court's conclusion that the filling in of the property would be conducive, rather than harmful, to the public safety, health and welfare, there being testimony that the property presently is a dank, noisome and unlovely breeding place for various pests.

7. TOWNSHIPS—ZONING ORDINANCE—FLOOD CONTROL.

Township may not resort to measures for flood control by resort to powers conferred by township zoning ordinance in the absence of provisions therein relative to flood control.

8. SAME—ZONING ORDINANCE—RUBBISH DUMP.

Owner of tract of property in township, zoned for commercial and residential purposes, which is presently unusable because of its marshy nature and location along winding river may not be prevented from filling it in with dry rubbish from sanitation department of nearby city and ultimately covering the area with dirt because of township zoning ordinance, since such application of the ordinance would be unreasonable and confiscatory.

Appeal from Oakland; Doty (Frank L.), J. Submitted October 6, 1959. (Docket No. 10, Calendar No. 47,971.) Decided November 25, 1959. Rehearing denied January 4, 1960.

Bill by Emma R. Keller against the Township of Farmington to enjoin enforcement of its zoning ordinance in such manner as to prevent fill of depressed area. Decree granting injunction. Defendant appeals. Affirmed.

*Davis & Thorburn,* for plaintiff.

*Joseph T. Brennan,* for defendant.

VOELKER, J. The plaintiff-appellee Emma R. Keller owns a piece of property with a 508-foot frontage on the south side of Grand River avenue, east of Middlebelt road, in the township of Farmington in Oakland county. The depth of the property to the south varies between 528 feet and 641 feet, the variance being caused by the ubiquitous River Rouge, which meanders across the southerly portion of the property in what may be described as a north-bending loop or horseshoe curve.

The property slopes off abruptly toward the river, by far the greater part being approximately 20 feet below the grade of Grand River avenue, and finally only 1 or 2 feet above the normal river level. It is undisputed that in its present condition the greater portion of the property is unsightly, marshy, rat-infested, and totally useless for all practical or esthetic purposes.

. At the time this suit was commenced plaintiff and her deceased husband had been the owners of the property for more than 15 years. Plaintiff resides on a high portion of the land fronting on Grand River, where she operates an apartment house and cabins, from which she gets her living. It was and is plaintiff's desire to build a dirt dike some 26 feet high parallel to the river bank and then to fill in the marshy lowlands lying north of it with rubbish received from the sanitation department of the city of Detroit, which rubbish would then ultimately be covered by a layer of dirt. The retaining dike would be approximately 6 feet higher than the ultimate grade of the property. The time required for completing the fill is estimated at 2 years. The purpose and effect of all this would be to give plaintiff a usable piece of property, cover a low and unsightly marshy area that is currently a breeding place for rats and other pests, and restrict the River Rouge to its basin.

The township of Farmington has a zoning ordinance that classifies that portion of plaintiff's property abutting Grand River avenue as commercial property and the remainder as residential. Under those restrictions it is conceded by the township that the major portion of the property in its present condition is of little or no use to anyone.

To achieve her purpose the plaintiff first applied to the township for a permit to fill the property with dry rubbish to be obtained from the sanitation department of the city of Detroit. A public hearing was had on her application by the township governing board. That body turned her down, apparently for 2 reasons: first, that the fill proposed by the plaintiff would constitute the operation of a commercial dump, contrary to the zoning ordinance; second, that filling the property as planned would remove an existing flood plain of the River Rouge and thus have a tendency during high water to cause the river to back up and possibly flood other areas of the township.

After the township board denied plaintiff's petition for a permit to fill the property, she filed her present action, asking the circuit court to enjoin the township from enforcing its zoning ordinance in respect to her property. A full-dress hearing was had at the trial level, including a visit to the premises by the chancellor. Subsequent thereto the chancellor granted an injunction against appellant restraining the enforcement of the zoning ordinance as to plaintiff's property, saying that as to this particular piece of property the ordinance was unreasonable and confiscatory and therefore unconstitutional. From that decree the defendant township has appealed.

At the hearing the plaintiff argued, and the chancellor agreed, that our decision in *Plum Hollow Golf & Country Club* v. *Southfield Township,* 341 Mich 84, was controlling of the present case. Appellant natu-

rally contends that the case can be distinguished. In the *Plum Hollow Case* the plaintiff had a similar marshy basin on its property, and because of existing zoning restrictions and the contour of the ground the area was likewise useless for all practical purposes. There the plaintiff petitioned the township for a permit to fill the offending basin in the same manner and with precisely the same type of material (dry rubbish) as the plaintiff in the instant case proposes to fill her property. The petition was denied and the plaintiff sought and was granted a writ of mandamus ordering that the permit be granted. On appeal this Court affirmed the action below, saying that as to that particular parcel of land the zoning ordinance was unconstitutional. In our view any attempt to distinguish the *Plum Hollow* decision only further points up the similarity between the 2 cases.

Appellant contends further: (1) that plaintiff should be denied equitable relief because an adequate remedy at law by mandamus was available to her; and (2) because she had not first exhausted her administrative remedies under the Farmington township zoning ordinance by first appealing to the township zoning board of appeal, as provided in the ordinance. In this regard we note that the plaintiff claimed that the application of the zoning ordinance would be unreasonable and confiscatory and, therefore, unconstitutional as to her piece of property, and she therefore sought an injunction restraining the enforcement of that ordinance as to her property. In such a situation we do not think that she pursued the wrong route. We note the following cases in which the issuance of an injunction was upheld: *Long* v. *City of Highland Park*, 329 Mich 146; *Industrial Land Co.* v. *Birmingham*, 346 Mich 667.

We further note that the zoning ordinance limits the appeal board to granting a temporary use inci-

dental to residential development in residential zones, and apparently makes no provision for granting such a permit regarding property in the commercial zones, in which part of plaintiff's property is located and a portion of which she seeks to fill. It would seem to follow, therefore, that an appeal to that board would have been a vain and fruitless act, since it lacked the power to grant the relief sought. In such circumstances we do not think she is barred from following the course she took.

Appellant further contends that the zoning ordinance is not unreasonable and confiscatory as applied to plaintiff's land. As we have said in many prior decisions, we hear equity cases *de novo* on the record but give considerable weight to the findings of the chancellor, since he is manifestly in a more advantageous position to determine disputed questions of fact. In the instant case the chancellor found the ordinance to be unreasonable and confiscatory as applied to plaintiff's property, because it prevents any practical use of the property. He reached that finding as a result of a personal visit to the premises, a familiarity with the general area, and after extensive hearing on the subject. We are not persuaded that the chancellor erred in his judgment.

As part of the above question appellant contends that the chancellor should not have reviewed the fact question at all, the administrative board having already found sufficient evidence upon which to base its findings. To that end see *Pere Marquette R. Co. v. Muskegon Township Board,* 298 Mich 31, 36, where we said: "We realize that the court should not interfere with the judgment of a zoning board if there is a reasonable basis for its ruling." Here the trial court held, and we agree, that there was no reasonable basis for the board's holding. Before any tribunal can reach such a determination, it rather obviously must first review the facts.

Appellant next urges that where the weight of the evidence presented at the trial indicates substantial detriment to public safety, health and general welfare the court below should not in effect have granted plaintiff permission to fill her property as requested. This seems to beg the very question at issue. Moreover, appellant then proceeds to concede that there is no chance of pollution of the River Rouge as a result of plaintiff's filling in of her property, although it urged this originally. The only other testimony presented below regarding public safety, health and general welfare bore almost exclusively on the present condition of the property, that is, that it is a dank, noisome and unlovely breeding place for various pests. We share with the chancellor his conclusion that the filling in of this property will more likely conduce to, rather than harm, public safety, health and welfare.

As for the claimed danger of future flooding, it strikes us that the flood control question was injected in this case largely as a legalistic attempt by appellant somehow to distinguish this case from the *Plum Hollow Case, supra*. That this is so becomes even more apparent when we note that appellant virtually concedes that any other type of fill might well have been permitted. Moreover, nowhere in the township zoning ordinance is there any reference to flood control. If the township has power to establish flood controls, which we do not pass on, it appears rather clearly not to have done so in the ordinance in question. It is limited to zoning.

This is not a case where a property owner seeks judicial sanction to use her property for a purpose *other* than that for which it was zoned; her supplication is far more modest; she seeks only to fill and improve her property (by the only commercially feasible means available to her) so that it may be used for the purpose for which it was originally

zoned.   Put another way this case boils down to this: appellant township has chosen to zone this swampy property for commercial and residential purposes; it appears conceded all around that in its present shape it cannot possibly be used for residential or indeed for any purposes; plaintiff seeks to improve her property so that she can use it for the purposes for which it was zoned and upon which she presumably pays taxes; defendant appears to want to stop her, not so much because it objects to the improvement and use of the property for those purposes (with its presumed ultimate gain in increased property taxes), but rather because it objects to the means sought to be employed.   We are not persuaded that under the circumstances of this case, and further in view of the *Plum Hollow Case,* that its objections should prevail.

The decree of the trial court is affirmed.   Costs are awarded to the prevailing party.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.