JOHNSON v. JOHNSON.

1. DEEDS—SETTING ASIDE—FINDING OF COURT—EVIDENCE.

Evidence in suit to set aside a deed of farm property from plaintiff to his brother and from latter to himself and wife *held*, to support conclusions reached by trial court that plaintiff was in a weakened condition, away from home, ill, and under a doctor's treatment at time deed, drafted by defendant brother's attorney, he signed was executed, that brother was more or less of a fiduciary, that plaintiff did not have independent advice from an attorney of his own choosing, although each separate act perhaps did not constitute fraud.

2. APPEAL AND ERROR—CHANCERY CASES—FINDINGS OF COURT—EVIDENCE.

The Supreme Court hears and considers chancery cases *de novo* on the record on appeal, but is inclined to give considerable weight to the findings of the trial judge who is in a better position to test the credibility of the witnesses by observing and hearing them in court.

Appeal from Kent; Hoffius (Stuart), J. Submitted June 6, 1961. (Docket No. 6, Calendar No. 48,-870). Decided June 29, 1961.

Bill by Fred H. Johnson against Oscar A. Johnson and Annette Alley Johnson to set aside deeds and quiet title. Decree for plaintiff. Defendants appeal. Affirmed.

*Clem H. Block,* for plaintiff.

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur, Deeds §§ 30, 38.
[2] 3 Am Jur, Appeal and Error §§ 815, 895.

*Irving H. Smith,* for defendants.

KAVANAGH, J. Defendants appeal from a decree setting aside 2 deeds—one given by plaintiff Fred H. Johnson to his brother Oscar A. Johnson covering plaintiff's 240-acre farm located in Sparta township, Kent county, Michigan; the second from Oscar A. Johnson as grantor to himself and Annette Alley Johnson, his wife, as grantees, covering the same farm.

Plaintiff is a resident of Kent county, Michigan, and defendants, husband and wife, are residents of New Orleans, Louisiana.

On September 25, 1959, plaintiff filed his bill of complaint asking that the court decree defendants have no legal or equitable interest in his farm. Plaintiff alleges defendants had paid no consideration for the deed and had by fraud been able to secure plaintiff's signature on what plaintiff now understands was a deed. Plaintiff, age 71 at the time of the trial, was ill (mentally and physically, off and on) for some little time prior to the execution of the deed. The mental condition does not seem to have been a serious one, yet a probate court petition for appointment of a guardian made and filed in early 1959 resulted in no hearing but in the placing of plaintiff in a convalescent home. Plaintiff was a patient in the home from January 8, 1959, to April 1, 1959.

The deed in question was executed on December 26, 1958, while the plaintiff was visiting defendants in New Orleans. It is alleged plaintiff knew nothing about the deed until informed of its existence; that he was physically and mentally sick at the time of the execution; that the deed was without consideration; and that defendants fraudulently secured plaintiff's signature.

It is alleged plaintiff took or had administered to him (during the New Orleans visit when the deed was signed) a drug or sedative called "deprol." Plaintiff's theory is that he must have been under the influence of deprol with knowledge of the defendants when the deed was placed before him for signature; also, that on account of his mental and physical condition defendant brother occupied the position of a fiduciary with respect to the transaction in question.

Defendants answered the bill of complaint averring they were the owners by the entireties of the farm, and denying fraud and all the other allegations in the bill of complaint.

At the trial it developed plaintiff, while in New Orleans, was ill and received treatment from a psychiatrist, who prescribed the drug. It further developed plaintiff had lost some 35 pounds in a short period of time. It was also shown an attorney employed by the defendants drafted the deed.

The trial court filed a written opinion in which he related the pertinent facts with reference to the testimony in regard to plaintiff going to New Orleans, his health, his reliance upon his brother Oscar for business advice, the handling of plaintiff's money by Oscar both in Michigan and in New Orleans, and found that plaintiff was known to be ill when his brother took him to New Orleans.

The trial court found that at the time of the execution of the deed by plaintiff to defendant Oscar A. Johnson, plaintiff was not a well and healthy, able-bodied person, and then concluded:

"I feel that based upon all of the testimony, and not based upon, solely upon fraud, and not based solely upon the mental competency or incompetency of the plaintiff, but based upon all of these reasons; namely, the fact that he was in a weakened condition; the fact that he was away from home; the fact that he

was ill; the fact that he was under a doctor's treatment; the fact that he did not have independent legal advice from an attorney of his own choosing; the fact that his brother was in a, more or less, fiduciary relationship, requires that the court set aside this conveyance of December 26, 1958, and the subsequent conveyance between the defendants; so, that the decree may be drawn setting aside the conveyance."

A reading of the record in this case and the opinion of the court brings us to a conclusion there was ample evidence to support the conclusions reached by the trial judge. He carefully pointed out that each separate act perhaps did not constitute fraud, but that in his opinion the accumulation of those acts was sufficient to justify his finding.

We hear and consider chancery cases *de novo* on the record on appeal. *Osten-Sacken* v. *Steiner,* 356 Mich 468; *Futernick* v. *Cutler,* 356 Mich 33; *A & C Engineering Co.* v. *Atherholt,* 355 Mich 677; *Straith* v. *Straith,* 355 Mich 267; *Ball* v. *Sweeney,* 354 Mich 616. This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases. This is primarily because the trial judge is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such oportunity. We do not ordinarily disturb the findings of the trial judge in an equity case unless, after an examination of the entire record, we reach the conclusion that had we been in the position of the trial judge we would have arrived at a different decision. A reading of the appendices and briefs in this case does not lead us to such a conclusion.

We, therefore, affirm the decree of the lower court. Plaintiff shall have costs.

DETHMERS, C.J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and SOURIS, JJ., concurred.