McCARRON *v.* UPPER PENINSULA HAULING ASSOCIATION.

Opinion of the Court.

1. Dismissal and Nonsuit—Directed Verdict—Court Rules.

A defendant's motion for directed verdict in an action tried without a jury should properly be stated as a motion to dismiss, but it can be regarded by the court as such a motion even though it is stated in terms of a directed verdict (GCR 1963, 504.2).

2. Appeal and Error—Findings of Fact.

Finding by trial court that no negligence of defendant was shown by plaintiff *held*, not clearly erroneous on record presented and therefore affirmed (GCR 1963, 517.1).

Concurring Opinion.

Holbrook, J.

3. Negligence—Evidence—Burden of Persuasion—Duty of Defendant to Present Evidence.

*No testimony or evidence need be introduced on behalf of defendants if the trier of facts finds that no negligence has been proved by plaintiff.*

4. Same—Determination of Trier of Fact.

*Determination by trial judge acting as trier of fact that plaintiff had not proved any negligence on the part of defendant was supported by the record.*

Appeal from Chippewa, Baldwin (George S.), J. Submitted Division 3 March 5, 1968, at Grand Rapids. (Docket No. 2,471.) Decided August 30, 1968.

References for Points in Headnotes

[1] 53 Am Jur, Trial § 1126.
[2] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*
[3] 38 Am Jur, Negligence § 285 *et seq.*
[4] 38 Am Jur, Negligence § 332 *et seq.*

Complaint by Frederick G. McCarron and Janice McCarron against Upper Peninsula Hauling Association, Jacob Himmel and Laura Himmel, and Donald Nettleton and Deloras Nettleton for personal injuries sustained as a result of defendants' negligence. Verdict and judgment for defendants. Plaintiffs appeal. Affirmed.

*Platt & Platt* (*Jack Church*, of counsel), for plaintiffs.

*Veum & Veum*, for defendants Jacob and Laura Himmel.

Quinn, J. At the close of plaintiffs' proofs in this nonjury negligence action, the trial judge granted defendants' motions for directed verdict on the basis no negligence had been shown. Properly, these should have been motions to dismiss under GCR 1963, 504.2, and we so treat them.

Pursuant to the requirements of GCR 1963, 504.2, the trial judge made the findings required by GCR 1963, 517.1. A review of the trial record does not persuade us that such findings are clearly erroneous.

Affirmed, with costs to defendants.

McIntyre, J., concurred with Quinn, J.

Holbrook, P. J. (*concurring*). The facts of this action are well stated in plaintiffs' appellate brief, which facts defendant adopts:

"This is a suit for a personal injury which occurred when a team of horses broke loose at a horse pulling contest and ran into a corral where the plaintiff was standing. The horse caused a log to fall over and it resulted in a broken leg to the plaintiff, Frederick G. McCarron.

"On June 14, 1964, the plaintiff, who is 66 years of age, attended a horse pulling contest on the farm of the defendants, Jacob and Laura Himmel, on East Six-Mile road off US-2 near Sault Ste. Marie, Michigan. The event was advertised in the county and an admission of 75 cents was charged. The defendants in the case are the property owners, Jacob Himmel and Laura Himmel, and the horse owners, Donald Nettleton and Delores Nettleton, and an unincorporated association known as Upper Peninsula Hauling Association.

"At the time the event took place, there was some 800 or a thousand people at the event. The proceedings took place on the farm of Mr. and Mrs. Himmel and their arena and corral was used for a consideration. The Six-Mile road runs east and west and the farm is located on the south side of the Six-Mile road. The arena runs north and south. It is a couple of hundred feet square and is fenced in where the events take place. Directly south of the arena is a corral and the corral was fenced in by a tall board fence.

"Mr. McCarron went to the defendant's farm on June 14th, paid his admission, and was admitted on the westerly side of the fence. The plaintiff went down to the south end of the arena where the barn is located. He then walked across to the corral where there was quite a number of spectators. The plaintiff stood by the fence separating the arena from the corral and watched what was going on in the arena. While standing near the fence, the plaintiff observed one of the teams being readied to fasten on to the stone boat at the north or far end of the arena. The team being fastened to the stone boat was owned by the defendants, the Nettletons; and it was excited and got away from the handler. There was no bit in one of the horses when it appeared to attempt to pull the stone boat.

"The horses then got away from the handlers at the northerly end of the arena and ran southerly across the arena to a gate which leads to the corral.

The gate was open and there was no attendant there. The horses ran through this gate into the corral and ran southerly towards the barn. When they could not run out of the corral, they turned around and retraced their steps northerly back through the gate separating the corral from the arena. At this point one horse straddled the fence at the westerly end of the gate and didn't clear the gate, thus the one horse went on one side of the gate and one horse went on the other side. The horse that did not clear went along the fence where the plaintiff was standing. The horse came along side of him, knocking him over and then the horse fell over a log and Mr. McCarron's leg was broken. The plaintiff sustained a fracture of his right leg below the knee.

"The plaintiff was laid up for approximately 2 months in a cast and lost time from work. He incurred medical, hospital and other miscellaneous out-of-pocket expenses. The plaintiff's wife, Janice McCarron, also filed a claim for her losses and the comfort and society of her husband.

"The court in its opinion rendered at the completion of plaintiff's proofs stated that he granted defendant's motion for a directed verdict based on the fact that the plaintiff had presented no question of fact to be decided."

The findings of the trial court, as relevant, are as follows:

"Well in this case, which is very interesting to say the least, there are some interesting legal propositions. I think the question is one of law now and not fact. First, I hold there is absolutely no evidence of any existence of the Upper Peninsula Hauling Association. A verdict will be directed as to that. I remark at the outset that all the evidence at this stage of the proceeding I have to take in the light most favorable to the plaintiff, and all the inferences therefrom, and I have to assume that the

plaintiff's testimony is true. But assuming all the plaintiff's proofs are true, I find there is no evidence that the Upper Peninsula Hauling Association existed.

"Secondly, as to the Nettletons, they would not be liable just for participating in the contest, because it wasn't negligence just to participate, and they would not be liable unless Mr. Nettleton, driving the horses, or his handlers were negligent. It was not negligence to miss a hookup because that is part of the game. I suppose one-third of the time they miss the hookup. It's almost like a field goal kicker; he doesn't kick it right every time, sometimes he misses. So the fact he missed the hookup is not negligence. That in itself is not negligence. There would be negligence on the part of Nettletons if there were any proof in this case that there was a defective stone boat or a defective hook, but there is no showing of a defective stone boat or defective hook. On this I am going to direct a verdict for the Nettletons.

"In regard to Himmels, referring to Mr. Veum's point that they were just owners. I think the law is clear that the owner who permits a contest on his ground is liable, if the contest is conducted negligently. So the Himmels cannot be excused merely because they are the owners and were not the promoters. Presumptively in this case they were the promoters themselves, but they are not to be excused merely because they were just the owners. But as to the Himmels, we have to go through all the questions of negligence in this case. And I don't think I have to go any further than the question of negligence. I don't think I have to get into the question of contributory negligence or proximate cause. It wasn't negligence to put on the show. It wasn't negligence to keep that gate open, because it should have been kept open to let the horses through. It would be better if they had that gate open. Just keeping the gate open is not itself negligence. And I hold that it is not.

"Now was it negligent not to have more attendants and police officers and grab everyone by the neck and throw them out of that corral? I don't think the failure to warn people to keep out of the corral, or to put up signs, or to announce that they shouldn't go in the corral is negligence. The plaintiff in this case was bound to know there was a certain amount of danger in going into the corral, just like we know there is a certain amount of danger walking across the street. It isn't negligence not to keep people from going into that corral. I don't see where there is any negligence in this case."

Plaintiffs complain that no testimony or evidence was introduced on behalf of defendants; however, no such testimony need be introduced, if the trial court sitting as trier of facts and law, finds no negligence has been proven by plaintiffs. The trial judge's findings, under GCR 1963, 504.2, sustained by the trial record, properly disposed of the case.

Affirmed with costs to defendants.