JAMENS v SHELBY TOWNSHIP

OPINION OF THE COURT

1. DISMISSAL AND NONSUIT—ACCELERATED JUDGMENT—COURT RULES.

Defendant's motion for accelerated judgment at the conclusion of plaintiff's proofs in a nonjury action can be regarded by the court as a motion to dismiss.

2. TRIAL—ZONING—VIEW—DISCRETION.

A trial court's refusal to view property in question in a zoning dispute upon the request of plaintiff is not a sufficient showing of abuse of discretion to constitute reversible error.

3. ZONING—VALIDITY—BURDEN OF PROOF.

A zoning ordinance is presumed valid and the attacking party has the burden of establishing affirmatively that the permitted uses of the property are so devoid of feasibility that the zoning restriction has accomplished the destruction of all usable value.

4. ZONING—WITNESSES—PARTIES.

Testimony by plaintiff-owner of property indicating that there were problems presented in any use of the property under the present zoning is insufficient to overcome the presumption of validity of the ordinance and to establish that the property was completely unusable under the present zoning.

5. ZONING—LICENSES—PREREQUISITES.

The requirement that the property be rezoned to a quarry district before a license is issued to operate a quarry on the property is a reasonable requirement.

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur, Pleading §§ 335–343.
[2] 53 Am Jur, Trial § 442.
[3, 4] 58 Am Jur, Zoning § 16.
[5] 58 Am Jur, Zoning § 169.
[6] 58 Am Jur, Zoning §§ 21, 22.
[7] 58 Am Jur, Zoning § 14 *et seq.*

6. ZONING—PREFERRED USE—BURDEN OF PROOF—REASONABLENESS.

    *A municipality which seeks to exclude a preferred land use through its zoning ordinances has the burden of proving the reasonableness of the exclusion.*

7. ZONING—PREFERRED USE—NATURAL RESOURCES—BURDEN OF PROOF.

    *In a case where a property owner seeks to have declared invalid a zoning ordinance which prohibits the removal of natural resources from his land, the property owner must establish a* prima facie *case that the natural resources exist in usable quantities and can be removed in a manner compatible with adjacent land use, in order to shift the burden of proving the reasonableness of the ordinance to the municipality.*

Appeal from Macomb, Alton H. Noe, J. Submitted Division 2 November 4, 1971, at Lansing. (Docket No. 11309.) Decided June 26, 1972.

Complaint by William H. Jamens, Arthur J. Hill, Louise A. Hill, Arthur J. Hill, Jr., Alice Hill, and Roman Halanski against Shelby Township to have defendant's zoning ordinance declared unconstitutional, to enjoin defendant from enforcing the ordinance, and for mandamus commanding defendant to issue earth removal and landfill permits. Judgment for defendant. Plaintiffs appeal. Affirmed.

*Sanborn & Liedel,* for plaintiffs.

*Roy W. Rogensues,* for defendant.

Before: DANHOF, P. J., and BRONSON and TARGONSKI,* JJ.

TARGONSKI, J. Plaintiffs are the land contract

_____
* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

purchasers of an 18.631-acre parcel of land in the defendant township. The land is zoned single family residential under the defendant's zoning ordinance No. 1. Defendant also has in existence ordinance No. 35 regulating the removal of earth and materials from land and ordinance No. 34 regulating the filling of land.

On March 12, 1969, plaintiff William H. Jamens filed an application to rezone the subject land to a Q-D (quarry district) from the present R-1-C (one family residential district). A public hearing was held before the defendant's planning commission on April 7, 1969, which body at the meeting recommended that the application to rezone be denied. The defendant's township board then considered the application at its meeting held on April 15, 1969, at which they also voted to deny rezoning of this land.

Plaintiffs, concurrently with filing the application for rezoning, also attempted to file an application for earth removal and an application for landfill with defendant's clerk; however, they were returned pending rezoning.

Upon denial of the application for rezoning, the present action was initiated on March 19, 1970. In plaintiffs' complaint, they requested that the defendant's zoning ordinance No. 1, as amended, which zoned plaintiffs' property R-1-C, be declared unconstitutional and that the defendant be permanently enjoined and restrained by injunctive order from enforcing ordinance No. 1 against plaintiffs' land, and that a writ of mandamus be issued commanding the defendant to issue the permits for earth removal and landfill under its ordinances No. 34 and No. 35.

A nonjury trial was held in the Macomb County Circuit Court on February 10, 1971. At the conclu-

sion of plaintiffs' proofs, upon defendant's motion, a judgment of no cause of action was entered in favor of defendant on February 22, 1971, in conformity with the court's findings of fact and conclusions of law duly entered on the record. No motion for a new trial was filed. Plaintiffs now appeal as of right citing five instances of error. Our analysis follows.

I. *Did the trial court commit error in granting defendant's technically incorrect motion for "accelerated judgment" at the conclusion of plaintiffs' proofs?*

At the conclusion of plaintiffs' proofs, defense counsel made a motion for "accelerated judgment" which was granted by the court. Plaintiffs contend that a motion for accelerated judgment, GCR 1963, 116, was not the proper motion to be made at the conclusion of plaintiffs' case; and that the proper motion should have been a motion to dismiss pursuant to GCR 1963, 504.2. Defendant concedes the validity of this contention but contends that defense counsel intends, in moving for an accelerated judgment, to properly make a motion to dismiss instead. Defense counsel made a statement at the time the motion in question was presented. That statement, indicative of his intention, is as follows:

" * * * I think we are entitled to have the court's judgment of dismissal of his complaint, and judgment of no cause for action entered."

We agree with the plaintiff that a motion to dismiss is a defendant's proper motion when a plaintiff has completed the presentation of his evidence to the court in a nonjury trial, since such a motion may be made without waiving his right

to offer evidence in case the motion is denied. *Irwin v Via,* 2 Mich App 375 (1966). Nevertheless, that the motion in question here should properly be deemed a motion to dismiss is supported by *Dauer v Zabel,* 19 Mich App 198 (1969); *McCarron v Upper Peninsula Hauling Association,* 13 Mich App 168, 169 (1968); *Irwin v Via, supra.* In *McCarron,* the Court stated:

"At the close of plaintiffs' proofs in this nonjury negligence action, the trial judge granted defendants' motions for directed verdict on the basis no negligence had been shown. Properly, these should have been motions to dismiss under GCR 1963, 504.2, and we so treat them."

Thus, we hold, a motion for "accelerated judgment", like a motion for a directed verdict, will be considered a motion to dismiss where such a motion is proper in a nonjury action.

II. *Did the trial court err in not viewing the parcel of land in question, having been requested to do so by the plaintiff at the trial?*

At the conclusion of plaintiffs' case, plaintiffs requested that the court view the land in question. The court elected not to do so. It is the claim of plaintiffs that such omission was, in this case, prejudicial to plaintiffs and an abuse of discretion.

We are unable to locate Michigan case law dealing with this issue. However, GCR 1963, 513 provides in part:

"Upon application of either party or upon its own initiative, the court may order an officer to conduct the jury as a whole to view any property or place where a material fact occurred."

In the author's comments regarding the forego-

ing in 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 498–499, it is stated, again in part:

"The language of Rule 513, authorizing the court to order a jury view, is permissive and not mandatory.

\*   \*   \*

"The new rules say nothing about the trial judge taking a view of a thing or a place involved in a case which is being tried without a jury. In an action tried by the court without a jury, it was held proper for the trial judge to view the scene of an accident involved in the case for the purpose of clarifying his understanding of undisputed facts. *Toussaint v Conta,* 1940, 292 Mich 366, 290 NW 830. And it has been held proper for the trial judge to visit an incompetent during the trial of a suit by his guardian to set aside an exchange of conveyances of real estate. *Mettetal v Hall,* 1939, 288 Mich 200, 284 NW 698. There seems no basis to doubt that in matters tried without a jury, the trial court *may* exercise its *inherent discretionary power* to view a thing or place with at least as wide a latitude as is available for view by the jury." (Emphasis added.)

Abuse of discretion has been defined as follows in *People v Sawicki,* 4 Mich App 467, 473 (1966), quoting from *Spalding v Spalding,* 355 Mich 382, 384–385 (1959):

" 'The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' "

A sufficient showing of abuse of discretion, in the trial court's failure to view the property in

question, has not been made by plaintiffs herein. The necessity for viewing the property was for the trial court to determine and we will not disturb that decision.

III. *Did the trial court err in dismissing the case at the conclusion of plaintiffs' proofs on the ground that the proofs presented were insufficient to invoke the relief requested?*

The trial court, in accord with the mandate of GCR 1963, 504.2, made findings pursuant to GCR 1963, 517.[1] Plaintiffs contend that the findings of the court were clearly erroneous, based upon the evidence presented.

Plaintiffs' proofs, regarding the suitability of the land as residential property, consisted solely of the testimony of plaintiff Roman Halanski, owner and operator of a sanitary landfill, and experienced in the building industry. It was his testimony that there exists on the 18-1/2-acre parcel of land in question an approximate 5-acre excavation 25 feet in depth; that several gravel pits are located in the area; that a trap shooting range is located approximately one-half mile west of the property in question; that a military personnel headquarters is also

---

[1] "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment. It will be sufficient if the court makes brief, definite, and pertinent findings and conclusions upon the contested matters without over elaboration of detail or particularization of facts. If an opinion or memorandum decision is filed, it will be sufficient if the findings and conclusions appear therein. The clerk shall notify the attorneys for both parties of the findings of the court. Findings of fact and conclusions of law are unnecessary on decisions of motions except as provided in sub-rule 504.2. * * * Requests for findings are not necessary for purposes of review. No exception need be taken to any finding or decision. Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it."

located to the west; and that a Nike missile base adjoins the property on the south and purportedly renders the property in question subject to a "masking easement" with air rights granted the government over this property. Mr. Halanski further testified that it was not feasible to make use of the property for residential purposes, as zoned, due to the location of the property and its lack of water and sanitary systems. Rather he believed the property's value lay in the sizeable quantity of fill sand, of a type used for highway beds, which might be excavated therefrom for use in highway construction. Mr. Halanski also admitted that the land was not purchased toward residential use, as zoned, but in anticipation that it could be rezoned for quarry and landfill use.

Additional proofs submitted by plaintiffs consisted of the testimony of Arthur Hill, which concerned itself chiefly with the filing by plaintiffs of the applications in question and with the nature of, and purported nuisance created by, the nearby trap-shooting range; that of plaintiffs' witness Gerald Mitchell, a civil engineer, which dealt with the proposed plans in regard to the quarrying and landfill operations on plaintiffs' land; and that of witness Daniel Fons, president of a landfill company, who testified regarding the work performed by his firm.

The trial court in its findings, stated in part:

"I think counsel is quite right that we do have to start off with the presumption of the validity of the ordinance, so the burden is on the plaintiff to show that the ordinance in its present shape and as it applies to this property is unreasonable and invalid for the reason that it creates an improper or unusual or illegal restriction on the use of the land by the plaintiff.

"Now, the property apparently is in a residential

area surrounded by a park as we view it from the aerial maps.

"It rather looks as though the purposes of the sale are quite evident here and it has a two-fold purpose, and possibly a three-fold purpose. The first is quarry and then to fill and then probably subdivide after that. ·

"It appears that on one side there is this trap-shooting affair, and if clay pigeons are involved and shot from either the system or from a mechanical device that projects them as I understand skeet shooting, and the purpose is not to have them going in the same direction, but have them go helter skelter so that the man with the gun is required to exercise more skill in trying to shoot them down.

"Of course the fact that many of them have been found on the plaintiffs' property would indicate that they did go in that direction and probably resulted in some shooting being taken at them and which could, of course, create some sort of danger to the property for residential purposes.

"I'm not familiar with this masking easement mentioned here. It has been briefly described as a Federal easement which prescribed the use of the property to the extent that buildings are not to be constructed because of the presence of the Nike site in which projectiles apparently, or missiles are set forth at a low range or level range and could possibly endanger homes or interfere with the missiles, whichever way you want to take it.

"I don't think I heard testimony here which indicates that this is completely unusable for residential purposes. There are extremes mentioned, and whether somebody wants to live near a Nike site or not, the fact is that there is a rather nice residential area apparently gone up quite recently just to the south of the site in question and having a proximity excavation to the west which are not too far removed except you want to consider a barrier between the existing subdivision along Ryan Road.

"Certainly the presence of the park surrounding the area would not make it undesirable for residential purposes, and except for these other things, the trap

shooting area there I don't see that there is anything there that interferes with the use as for residential purposes and so far as that's concerned, if it becomes a nuisance I would assume that the Shelby officials could by injunction have quickly eliminated that particular nuisance if it was as a matter of fact a nuisance and interferes with the proper use under the zoning of the property owned by the plaintiffs.

"I think it is a presumption of validity, and you have to indulge in that. I don't think it has been overcome."

In determining the reasonableness of a zoning ordinance, our standard is most adequately stated as follows, in *Sturdy Homes, Inc v Redford Twp,* 30 Mich App 53, 57–58 (1971), quoting from *Alderton v Saginaw,* 367 Mich 28, 33–34 (1962):

"We have held that a zoning ordinance to be valid must bear a direct and substantial relation to the objectives of police power, the preservation of the public health, safety, morals, and general welfare, of the community as a whole *(Long v City of Highland Park* [1950], 329 Mich 146); that the attacking party has the burden of establishing affirmatively that the ordinance has no real or substantial relation to public health, morals, safety, or general welfare and that the ordinance is presumed valid *(Austin v Older* [1938] 283 Mich 667); that each case must be determined on its own facts and circumstances *(Moreland v Armstrong* [1941], 297 Mich 32), and that in order for the courts to find action of the legislative body invalid, more than a debatable question is required *(Brae Burn, Inc v City of Bloomfield Hills* [1957], 350 Mich 425).

\* \* \*

" 'In determining validity of an ordinance we give consideration to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the general trend and character of building and population development *(Grand Trunk W R Co v City of Detroit* [1949], 326 Mich 387); unsuitability for residential purposes *(Ritenour v Township of Dearborn* [1949], 326 Mich 242); lack of market for such

purpose *(Long v City of Highland Park, supra),* and
whether the land will become "dead land" or nonin-
come-producing land without residential value *(Janes-
ick v City of Detroit* [1953], 337 Mich 549).' "

Furthermore, to quote Justice T. M. KAVANAGH
in *Christine Building Co v City of Troy,* 367 Mich
508, 517–518 (1962), quoted in *Briske v City of
Troy,* 381 Mich 611, 613–614 (1969):

" 'We hear and consider chancery cases *de novo* on
the record on appeal. *Johnson v Johnson* (1961), 363
Mich 354; *Osten-Sacken v Steiner* (1959), 356 Mich 468;
*Futernick v Cutler* (1959), 356 Mich 33; *A & C Engi-
neering Co v Atherholt* (1959), 355 Mich 677; *Straith v
Straith* (1959), 355 Mich 267; *Ball v Sweeney* (1958), 354
Mich 616. This Court, however, is inclined to give
considerable weight to the findings of the trial judge in
equity cases. This is primarily because the trial judge is
in a better position to test the credibility of the wit-
nesses by observing them in court and hearing them
testify than is an appellate court which has no such
opportunity. We do not ordinarily disturb the findings
of the trial judge in an equity case unless, after an
examination of the entire record, we reach the conclu-
sion we would have arrived at a different result had we
been in the position of the trial judge.' "

Turning now to the record presented, we find
that had we been sitting as the trier of the facts
we would have reached the same conclusion. As
the lower court stated, plaintiffs had the burden of
proving that Zoning Ordinance No. 1 of the de-
fendant township was unconstitutional as applied
to this property. In other words, under the present
zoning classification, R-1-C, plaintiffs must show
that all permitted uses on the property are so
devoid of feasibility that the zoning restriction has
accomplished the destruction of all useable value.
See *Reibel v Birmingham,* 23 Mich App 732 (1970).
Plaintiffs' proofs fall short of meeting this burden.

We note that plaintiffs have cited some apparently impressive cases in their brief, particularly *Plum Hollow Golf & Country Club v Southfield Twp*, 341 Mich 84 (1954), and *Keller v Farmington Twp*, 358 Mich 106 (1959). But upon close inspection of these two cases, we find that it was undisputed that the land in question was totally useless for all practical or desirable purposes. This is not the situation here. On the contrary, that is the point that is in contention here—whether plaintiffs' land has any reasonable use under the R-1-C classification.

As already noted, plaintiff Halanski provided the only substantial testimony as to single-family residential use of the property in question. Halanski's testimony certainly indicated that there were problems present in any anticipated use of the property for single-family residential purposes. But his was the only material testimony. It is apparent that the trial court felt that this very biased but limited testimony was insufficient to establish that this land was completely unusable for residential purpose. We have the same feelings. Whether plaintiffs could have succeeded by more competent and qualified testimony, we hesitate to speculate. But upon the actual proofs brought forth, plaintiffs did not show enough.

IV. *May the defendant township require the plaintiffs to rezone their property to a quarry district before applying for an earth removal permit?*

Plaintiffs claim that they should be allowed to use their property in any manner which would afford access to the valuable sand deposits purportedly contained therein, the use being such as would not interfere with the health, safety, or

welfare of the community; that by requiring the rezoning of the land before a quarry permit can issue, the defendant township is in a position to indirectly deny the plaintiff a quarry permit which they desire even in the event that they meet all of the standards set forth to obtain a permit. In other words, the plaintiffs argue that the provisions of the defendant's zoning ordinance No. 1, as amended, requiring the land to be zoned Q-D (quarry district) before a permit under ordinance No. 35 may be granted, is unconstitutional and invalid. We disagree.

The rule that zoning ordinances, when reasonable in their provisions, are valid exercise of the police power is stated in *Patchak v Lansing Twp,* 361 Mich 489, 495–496 (1960), as follows:

"Justice CARR said in *Anderson v City of Holland,* 344 Mich 706, 709:

" 'The legal principle is firmly established that zoning ordinances, when reasonable in their provisions, are a valid exercise of the police power. *Village of Euclid v Ambler Realty Company,* 272 US 365 (47 S Ct 114, 71 L Ed 303, 54 ALR 1016); *Austin v Older,* 283 Mich 667. The reasonableness of such an ordinance is recognized as the test of its legality. *Hitchman v Township of Oakland,* 329 Mich 331. In the application of the test indicated it necessarily follows that each case of this character must be determined on the basis of its own facts and circumstances. *Senefsky v City of Huntington Woods,* 307 Mich 728 (149 ALR 1433). It must also be borne in mind that the presumption of validity attends zoning regulations, and that the burden of proof is on one challenging such an ordinance to establish his claim. *Portage Township v Full Salvation Union,* 318 Mich 693; *Northwood Properties Company v Royal Oak City Inspector,* 325 Mich 419.'

"It is the duty of plaintiffs, who challenged the zoning classification, to show by competent evidence that the regulation has no substantial relation to public health,

morals, safety or general welfare. A reading of the entire record clearly shows plaintiffs produced no evidence to this effect."

From the aforementioned rules, it is apparent that a zoning ordinance which prohibits quarrying from certain areas of a township or municipality is valid where there is a reasonable basis for the adoption of the ordinance with a view toward the protection of the health, safety and general welfare of the public. It is also apparent that the burden is upon the attacking party to establish that the ordinance lacks a direct and substantial relation to the preservation of health, safety and welfare. Plaintiffs have failed to carry this burden here. The mere contention as to invalidity of defendant's ordinance does not suffice to render the same invalid. The requirement that the property be rezoned so as to permit the desired use thereof is not, in light of all evidence, an unreasonable requirement.

V. *Is defendant's landfill ordinance No. 34 a valid ordinance?*

A careful review of the trial court record discloses that this argument was neither raised nor considered in the court below. Recalling again that this is a court of review rather than a trial anew, this argument is not now open for appellate consideration. *People v Glasgow,* 32 Mich App 230 (1971); *Azzaro v Stupar,* 17 Mich App 170 (1969); *Citizens' Mutual Automobile Insurance Co v Houtz,* 361 Mich 309 (1960).
Affirmed.

DANHOF, P. J., concurred.

BRONSON, J. *(concurring).* I concur in the result

reached by the majority but believe my colleagues reach the right result for the wrong reasons in Part III.

This Court recently adopted a rule of law with regard to zoning which in essence states that where a property owner can point to an external state policy favoring his particular land use, then the municipality has the burden of proving the reasonableness of the exclusion. *Bristow v Woodhaven,* 35 Mich App 205 (1971) (mobile home parks); *Simmons v Royal Oak,* 38 Mich App 496 (1972) (multiple residential dwellings).

The doctrine of preferred use has its origins in the efforts of our courts to preserve our state's natural resources. Michigan courts have stressed the importance of not destroying or withholding the right to secure needed natural resources from one's property unless dire consequences will result therefrom. *North Muskegon v Miller,* 249 Mich 52 (1929); *Certain-Teed Products Corp v Paris Twp,* 351 Mich 434 (1958). The rule, as it applies to natural resources, was best stated in *Lyon Sand & Gravel Co v Oakland Twp,* 33 Mich App 614, 617–618 (1971):

" 'Where needed natural resources are known to exist in usable quantity their utilization should be permitted in a manner compatible with the present use of adjacent lands. The taking should not interfere with the reasonable use of neighboring properties but outright prohibition of the taking is in fact confiscation rather than conservation.' "

Merely stating the rule does not solve the problem in the instant case. Where natural resources are involved the property owner must establish a *prima facie* case that needed natural resources exist in usable quantities on his land and that it can be removed in a manner compatible with the

present use of adjacent lands. Once such a case is established, the burden shifts to the municipality. Plaintiffs have failed to prove their *prima facie* case. There is no evidence as to how much sand exists on the property; how it will be removed so as not to injure nearby parks and residences, and how long the mining would continue. Other than plaintiffs' unsupported statements, there is no evidence as to what type of sand exists on the property or whether it is needed by the state as plaintiffs allege. On such a record, I am compelled to affirm.