### OSTEN-SACKEN *v.* STEINER.

1. APPEAL AND ERROR—CHANCERY CASES—DE NOVO HEARING—CREDIBILITY OF WITNESSES.

The Supreme Court hears chancery cases *de novo* but recognizes the advantage possessed by the trial judge who saw the witnesses, heard the testimony, noted their demeanor on the stand and measured their credibility, since he was in a better position to determine the weight to be given the evidence than the Supreme Court.

2. DEEDS—DELIVERY IN ESCROW—INTENT TO PASS TITLE.

An owner of real estate may pass title to the grantee named in a deed by delivery of the instrument to a third person with instructions not to deliver to the grantee until after the death of the grantor, but it must be the design of the grantor to immediately pass title by such delivery.

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 912.
[2] 16 Am Jur, Deeds § 143 *et seq.*
[3] 45 Am Jur, Records and Recording Laws § 146 *et seq.*

3. SAME—RECORDING—CONSIDERATION.         ...

    Statute providing that an unrecorded conveyance of real estate would be void as to a subsequent purchaser in good faith and for a valuable consideration of the same realty whose conveyance is first duly recorded does not apply, where there is a lack of consideration established as to the later conveyance (CL 1948, § 565.29).

4. SAME—RECORDING—CONSIDERATION—EVIDENCE.

    A party claiming under a subsequently executed but prior recorded deed has the burden of showing the payment of a valuable consideration for his deed, a showing which must be by some other evidence than the mere recital of it in the deed (CL 1948, § 565.29).

5. SAME—RECORDING—CONSIDERATION—FRAUD—UNDUE INFLUENCE— EVIDENCE.

    Decree for plaintiff in suit to set aside a subsequently executed but prior recorded deed to same property is not disturbed under record presented, where there was conflicting testimony as to issues of intent to deliver the conveyance to plaintiff and that defendants were not bona fide holders for a valuable consideration and that they had obtained their deed by fraud and undue influence exercised over the grantor, now deceased (CL 1948, § 565.29).

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted April 8, 1959. (Docket No. 16, Calendar No. 47,612.) Decided June 6, 1959.

Bill by Edith Estelle Osten-Sacken against Ernest Steiner and Edith Ruth Steiner to set aside deed. Decree for plaintiff. Defendants appeal. Affirmed.

*Stewart J. Roche,* for plaintiff.

*L. W. Beardsley (James R. Golden,* of counsel), for defendants.

KELLY, J. October 27, 1953, Maud Wood executed a deed conveying to her niece (appellee) an apartment house in Battle Creek, and on January 20, 1956, she conveyed the same property to appellants,

Ernest Steiner and his wife, Edith Ruth Steiner. Henceforth in this opinion "appellant" shall refer to Ernest Steiner.

Both warranty deeds in fee simple reserved a life estate to grantor. Appellants' deed was recorded on January 26, 1956. Appellee's deed was not recorded previous to grantor's death in November, 1956.

Shortly after grantor's death, appellee started her action to declare appellants' deed a nullity and the chancellor granted her the relief prayed for.

The deed to appellee was drawn by grantor's attorney at her request, and was kept in the attorney's possession until grantor's death, at which time it was delivered to appellee. Appellee was not present at the time the deed was executed and grantor made no attempt subsequent to the execution of said deed to recall same.

Grantor's attorney had represented her for 30 years and the propriety of the execution is not challenged, nor is the fact that the deed and abstract were in an envelope with the following notation on the outside of the envelope:

"WARRANTY DEED

"The property of Edith Estelle Osten-Sacken, of Hart, Michigan, grantee therein, executed and delivered by Maud R. Wood, grantor in said deed, to said grantee on the 27th day of October, 1953.

/s/ "MAUD R. WOOD.

"October 27, 1953.

"This envelope contains a warranty deed of this date, executed by Maud Wood, also known as Maud R. Wood, as grantor therein, to Edith Estelle Osten-Sacken, of Hart, Michigan, as grantee therein, which deed is to be delivered after the death of said grantor to said Edith Estelle Osten-Sacken at such time as said Edith Estelle Osten-Sacken or her personal representative shall call for said deed."

Approximately a month after the execution of the deed, grantor brought appellee to the attorney's office and introduced her as her niece and as the person to whom she had deeded the property.

August 11, 1954, grantor executed her last will and testament, which will made no mention of the apartment building previously deeded to appellee. In this will appellant and his wife were each bequeathed $500 in cash.

Appellants, who were not related to grantor, occupied the apartment building as rent-free tenants from 1939 to 1950, and rendered service to grantor both in the operation of the building and for her personal comfort.

Grantor became addicted to alcohol and on April 30, 1955, was found unconscious in her apartment. From that date on until her death she was in and out of various convalescent homes and required barbiturate treatment.

Appellants and appellee's relationship was friendly up to grantor's death. Appellee testified that she lived in Hart, Michigan; that appellants lived in Battle Creek; that grantor had no living relatives in Battle Creek, and so in May, 1955, when it became apparent that grantor could not manage the apartment building, nor take care of herself, she (appellee) entered into an agreement with appellant whereby, for return for his services in taking care of grantor and her property, she would see to it that he would be compensated for such services out of grantor's estate.

Appellant testified as to such agreement as follows:

"*Q.* It is your testimony then that she didn't tell you that she would see you were paid out of the estate for your services?

"*A.* She said that possibly I could get money out of the estate because she was charging everything

out of the estate and that I would get paid out of the estate."

In June, 1955, appellant had his attorney prepare a power of attorney authorizing him to transact all business in connection with the apartment building and grantor's bank accounts, and secured grantor's signature while she was in a convalescent home. Appellee was not advised of this fact.

The deed to appellants, dated January 20, 1956, was prepared by their attorney, who at no time had any contact or conversation with grantor. The attorney's wife and a personal friend of appellant accompanied him as he brought the deed to the grantor, and both acted as witnesses and testified that they believed the grantor to be mentally competent.

On April 2, 1957, appellants filed a claim in the probate court of Calhoun county, Michigan, against grantor Maud R. Wood's estate, for services rendered to grantor "for her comfort and care from October 6, 1954 * * * to November 17, 1956," in the amount of $2,063. Appellant also claimed $100 for "loan for summer taxes" and after giving "credit by cash" of $60, on August 23, 1955, both appellants subscribed and swore that "there is now due and unpaid on said claim, over and above all legal set-offs, the sum of $2,103."

On cross-examination appellant admitted that he did not inform appellee that he had secured a deed from grantor, until after her death; that subsequent to obtaining the deed he requested and obtained from appellee $252 to pay grantor's doctor bill. At this point in the cross-examination the court interrupted and questioned appellant as follows:

"*The Court:* And you were charging that up to her, and you're now charging all of the money you

claim for expenses and everything in the probate court still against the estate?

"*A.* If all this—if there would not have been any objection by relatives—let me say it that way first. Dr. Nicholson told me to be sure and put all my services—write them down an account.

"*The Court:* That was proper. I see nothing wrong with that.

"*A.* And charge it against the estate.

"*The Court:* That's all right. That's all right.

"*A.* That's what I did. After I got the deed, I thought—I am still going to put it on the estate, but if there is no objections by the relatives, afterwards I will withdraw that.

"*The Court:* But this very account that you have got in the probate court now, is the account of all the services you rendered to her, isn't it?

"*A.* Yes, sir.

"*The Court:* Since October. And that's all you claim that you rendered to her, and that is the consideration that you claim was for the deed originally, isn't it?

"*A.* I don't quite understand the question.

"*The Court:* What do you consider the consideration of that deed was? Your services, wasn't it?

"*A.* Yes, sir.

"*The Court:* And those are the same services you're now claiming for in the probate court?

"*A.* Yes, sir, those are the same services.

"*The Court:* All right. Then the services weren't paid for when the deed was given."

We quote the following from the finding of the court:

"I therefore find that the deed to plaintiff was delivered in escrow and vested title *in praesenti* in plaintiff, and that deceased did not reserve any right to revoke or recall the same, and therefore it was a valid conveyance of the property in question to plaintiff.

"That the deed to defendants, Steiners, although it was recorded first, did not convey good title to them as they were not bona fide holders for a valuable consideration, and that the same was obtained by fraud and undue influence exercised over the deceased and should be set aside as null and void and that title decreed to be vested in plaintiff in fee simple, free and clear of any claims by defendants by virtue of said deed."

Appellants ask this Court to reverse the trial court and to determine that while grantor was incapacitated, such incapacity was physical rather than mental and, also, to rule that while a confidential relationship existed there was no evidence justifying a conclusion that said relationship was violated by appellants.

The record submitted in this appeal consisted of over 500 pages and discloses the conflict of testimony between appellee and her 7 witnesses and appellants and their 16 witnesses.

This Court has repeatedly held that while we hear chancery cases *de novo,* we recognize the advantage possessed by the trial judge who saw the witnesses, heard the testimony, noted their demeanor on the stand and thus was able to measure the credibility and, in consequence, is in a better position to determine the weight to be given the evidence than are the members of this Court.

See *Reed* v. *Kurdziel,* 352 Mich 287; and *A & M Land Development Co.* v. *Miller,* 354 Mich 681.

In regard to the trial court's finding that the deed to appellee delivered in escrow to the attorney vested title *in praesenti* to appellee, this Court in the recent case of *Lintner Estate* v. *Meier,* 344 Mich 119, 123, said:

"The law applicable to this case may be very simply stated, although the application of the facts thereto is more complex. Whether there has been a

delivery of a deed now depends upon the intention of the grantor. It is shown by his words and actions and by the circumstances surrounding the transaction."

In *Weber* v. *Schafer*, 236 Mich 345, we held:

"An owner of real estate may pass title to the grantee named in a deed by delivery of the instrument to a third person with instructions not to deliver to the grantee until after the death of the grantor, but it must be the design of the grantor to immediately pass title by such delivery." (Syllabus 2.)

That the provision of CL 1948, § 565.29 (Stat Ann 1953 Rev § 26.547) that "Every conveyance of real estate within the State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded," does not apply where there is a lack of consideration has been established by this Court in *Shotwell* v. *Harrison*, 22 Mich 410, where we held that the burden of proof is on the defendant, who claims title by virtue of priority of record against a prior but unrecorded deed, to show affirmatively the payment of a valuable consideration, and such showing must be by some other evidence than the mere recital of it in the deed.

The conflict of testimony has been resolved in favor of appellee, and we find nothing in the record or briefs justifying this Court in reversing the trial court.

Affirmed. Costs to appellee.

Dethmers, C. J., and Carr, Smith, Black, Edwards, Voelker, and Kavanagh, JJ., concurred.