HUNGERFORD *v.* TOWNSHIP OF DEARBORN.

1. TOWNSHIP—ZONING ORDINANCE.

A township zoning ordinance is presumptively valid and the burden is on party attacking it to prove that it is invalid because arbitrary, unreasonable, or confiscatory or that it bears no reasonable relationship to public health, safety, morals, or the general welfare.

2. APPEAL AND ERROR—CHANCERY CASES—CREDIBILITY OF WITNESSES —WEIGHT OF EVIDENCE.

The Supreme Court hears chancery cases *de novo* but does not ordinarily reverse the trial judge who has the opportunity to hear the witnesses testify and observe their demeanor on the stand and to formulate a better opinion as to the weight of their testimony.

3. TOWNSHIPS — ZONING ORDINANCE — RESIDENCES — PRESUMPTIONS —EVIDENCE.

The presumption of validity of township zoning ordinance limiting use of plaintiff's 20' x 100' lot to single-family residences, churches, and schools, *held*, not overcome, where there is evi-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 58 Am Jur, Zoning § 16.
  Zoning: Creation by ordinance of restricted residence districts from which business buildings or multiple residences are excluded. 19 ALR 1395, 33 ALR 287, 38 ALR 1496, 43 ALR 668, 54 ALR 1030, 86 ALR 659, 117 ALR 1117.
[2] 3 Am Jur, Appeal and Error §§ 815, 897.
[4] 58 Am Jur, Zoning § 14.
[5] 58 Am Jur, Zoning § 22.
[6] 58 Am Jur, Zoning § 4.

dence showing lots similarly situated on same and nearby streets are used for fine residential purposes, that frontage on the street is predominantly residential or undeveloped at present, that plaintiff's lot is not worthless as a residential lot and there are but few nonconforming uses made of lots in the vicinity.

4. SAME—TEST OF LEGALITY OF ZONING ORDINANCE.

Each township zoning case must be determined upon its own: facts, the test of its legality being dependent upon its reasonableness under those circumstances.

5. SAME—ZONING ORDINANCE—WIDTH OF LOT.

Fact that plaintiff's lot was only 20′ wide and limited by township zoning ordinance to single-family residence use was only one of several factors in determining whether application of the ordinance to his lot was reasonable and not arbitrary.

6. SAME—COVENANTS PERMITTING BUSINESS USE ON LOT ZONED FOR RESIDENCE USE.

Covenant in deed to plaintiff's 20′ lot specifically reciting that "buildings for business purposes *may* be erected" thereon was a permissive and not a restrictive covenant, hence, did not afford a basis for holding township zoning ordinance restricting use of the lot to single-family residences unreasonable and invalid.

Appeal from Wayne; Bohn (Theodore R.), J. Submitted October 13, 1960. (Docket No. 79, Calendar No. 48,643.) Decided December 2, 1960. Rehearing denied January 9, 1961.

Bill by Harold C. Hungerford against the Township of Dearborn to declare zoning ordinance void as to his property and to establish right to commercial or business use. City of Detroit, a municipal corporation, intervenes as party defendant. Bill dismissed. Plaintiff appeals. Affirmed.

*John J. Fish,* for plaintiff.

*Richard D. Dunn,* for defendant Township of Dearborn.

*John F. Hathaway,* Assistant Corporation Counsel, for intervening defendant City of Detroit.

KAVANAGH, J.   Plaintiff seeks to enjoin enforcement of the provisions of defendants' zoning ordinances which restricted use of plaintiff's lot to residential purposes.   This zoning permits the property to be used for single-family residences, churches, schools, et cetera.   Plaintiff further seeks to have the ordinances decreed invalid with respect to his property and to have his property zoned, by decree, for commercial or business use.   From decree for defendants dismissing the bill of complaint, plaintiff appeals.

Plaintiff is the owner of a vacant lot on the south side of Joy road between West Parkway and Hazelton streets.   West Parkway street lies in the city of Detroit and Hazelton street is in the township of Dearborn.   Plaintiff's lot has a width of 20 feet on Joy road and a depth of 100 feet and abuts on a 20-foot alley in the rear.   A small segment of this lot lies in the city of Detroit and the remainder in the township of Dearborn.   The block in which plaintiff's lot is located contains 10 vacant lots, 9 of which are owned by another party.   Plaintiff purchased his lot on land contract in 1927 as an investment and acquired the deed in 1933.   The portion of this lot and the other lots in the block situated in the city of Detroit were zoned residential by the city of Detroit in 1940.   The remainder of the lots in the block were zoned residential by the township of Dearborn in 1945.

Joy road is a 4-lane highway.   All the lots along Joy road west from Hazelton to Telegraph road are 20-foot lots zoned residential and entirely developed with homes ranging in value from $16,000 to $25,000, except in the block directly east of Telegraph road where there have been constructed a drugstore and 1 other commercial building.   The property in Redford township along the north side of Joy road is likewise all zoned residential.   There is a bar operated

on the north side of Joy road in the city of Detroit, which is commercial and constitutes a nonconforming use. There is a dry-cleaning establishment operated next to the bar, which is permitted by the city of Detroit zoning appeal board as an exception, although the zoning is still residential. The area south of Joy road to VanBuren and running from West Parkway toward Telegraph road for some 4 or 5 city blocks is entirely developed with single-family residences ranging in value from $16,000 to $25,000. East of West Parkway is River Rouge Park. All of the area along Joy road on the same side as plaintiff's lot is fully developed as residential except the block in which plaintiff's lot is located, which block remains vacant.

The trial court found that lots on Joy road similarly situated and not far removed from plaintiff's lot were used for fine residential purposes. It also found the frontage on both sides of the street was residential, except for the bar and dry-cleaning establishment. The court further found plaintiff failed to establish that conditions in the area made his lot worthless for residential purposes inasmuch as other lots with 20-foot frontage were consolidated and used for good residential homes. The court also found the ordinance restrictions were not unreasonable, arbitrary or confiscatory because of the existing conditions inherent in the neighborhood. The trial court took the time to go out and observe the location of this property, having concluded that only by personal observation could he ascertain whether a change in zoning of this lot would be detrimental to the public interest.

Plaintiff testified he purchased the lot in question for investment and speculation purposes, and that at no time did he ever intend to build on the lot, nor did he at any time request the authorities to rezone

the property. He further testified he would be willing to take $1,800 for the lot.

The only other witness testifying for the plaintiff said that, in his opinion, the lot in question had no value for residential purposes. He testified it would be impossible to build a house on this 20-foot lot. He also testified that he had investigated and found out there was no financing for the construction of a residence in that block, although he admitted similar adjoining blocks had apparently received financing making possible construction of better than average residences to the value of approximately $25,000 each. This was plaintiff's case.

Defendants presented Elmer E. Mueller, principal planner for the city of Detroit planning commission, who testified he had examined the subject property and believed the present zoning of residential was the proper zoning for plaintiff's lot. He further testified the zoning ordinances were based on a comprehensive plan for the area; that determination was made as to the amount of business frontage which would be necessary to serve the commercial needs of the community and the proper and best location for that commercial development. He testified that as far as this section of Joy road was concerned, the adequacy of other shopping facilities in the area and the contiguous park development made it an ideal and suitable location for residential development. He also stated the best use that could be made of the property, in view of all the interests involved, was residential. Inquiry was made of Mr. Mueller as to what effect the rezoning of this 1 lot would have on the surrounding residential development. His answer was, "It couldn't help but have a detrimental effect." When asked what he meant by detrimental effect, he said he meant a devaluation in property values as well as a blighting effect in the area. He testified that to his knowledge there are

approximately 40 miles of 20-foot lots within the city of Detroit which have been zoned for residential purposes and which have been developed with residential homes. He further stated that rezoning of this one lot would amount to spot zoning of the worst kind.

Fred Brune, a project engineer for Campbell Construction Company for about 27 years and presently chairman of the Dearborn township planning commission and appeal board, testified his committee considered there was no need for further commercial development to serve the area; that rezoning would have a harmful effect on the adjoining property owners and depreciate the value of the other homes in the area; that such rezoning would be spot zoning; that such a lot serving as a commercial development would not have sufficient off-street parking; and that the necessity of a masonry fence, required under the ordinance when any commercial property abuts a residential area, would adversely affect the public health and welfare of the residential area as the result of hours of operation, noises and nuisances. Mr. Brune testified that a single-family dwelling could be built and used on this lot which would meet all the requirements under the ordinance as to side, front and rear yard requirements. He testified he had all the plans and requirements for that type of home.

Jerome Schuck testified he owned a residence 1 block west of the lot involved in this litigation. He said he built his home, after having checked on zoning requirements, at a cost of $27,000 including the lots, and had been able to obtain mortgage money.

Other witnesses testified rezoning would have a detrimental effect upon the value of the substantial residential homes in the area.

It was clearly established by defendants and admitted by plaintiff that lots on Joy road similarly

situated and within a block of plaintiff's lot are used for fine residential purposes; that the frontage on that street is predominately residential at present; and that the subdivisions on both the north and south sides of Joy road are almost entirely built up with high grade homes. It was not established that conditions in the area and the zoning made plaintiff's lot worthless for residential purposes inasmuch as many of the lots in the area are so occupied and others are being developed for that purpose. As a matter of fact, the record discloses that plaintiff was willing to take $1,800 for his lot and an offer of $2,000 was made to him at the conclusion of proofs and subsequently rejected.

In *Korby* v. *Township of Redford,* 348 Mich 193, this Court said (p 196):

"The ordinance is presumptively reasonable and valid and the burden is on plaintiffs to prove that it is arbitrary, unreasonable or confiscatory, or bears no reasonable relationship to public health, safety, morals or the general welfare and is, therefore, invalid. *Austin* v. *Older,* 283 Mich 667; *Cady* v. *City of Detroit,* 289 Mich 499; *Fass* v. *City of Highland Park,* 321 Mich 156; *Northwood Properties Company* v. *Royal Oak City Inspector,* 325 Mich 419; *Stadle* v. *Township of Battle Creek,* 346 Mich 64."

While we hear cases of this type in chancery *de novo,* we do not ordinarily reverse the trial court who has the opportunity to hear the witnesses testify and observe their demeanor on the stand and to formulate a better opinion as to the weight of their testimony than we who examine only the cold, printed record. The trial judge here found, after listening to the witnesses testify and examining the premises, that for reasons inherent in the neighborhood and conditions there existing, plaintiff had not shown the ordinance to be unreasonable, arbitrary, or confiscatory. We cannot say, on this record, that he was

wrong.   We think it must be held, under all the proofs in the instant case, that the presumption of validity was not overcome.   This court has many times said that each zoning case, as a rule, stands by itself and must be judged by the circumstances in each particular case.   *Pere Marquette R. Co.* v. *Muskegon Township Board,* 298 Mich 31, 36.   We do not think, because plaintiff's property is only 20 feet in width, that this should be the sole determining factor as to whether the zoning is unreasonable.   It may be one of the factors that might lead to a conclusion, along with all others, that a zoning ordinance might be unreasonable.   We cannot say on the entire record that the trial judge reached a wrong conclusion.

Plaintiff contends that the deed to his lot carries with it a restrictive covenant that runs with the land and restricts the use of this property to business only.   The deed specifically recites, "Buildings for business purposes *may* be erected on Bonaparte avenue (now Joy road)."   The word "may" is a permissive one and not a word of restriction.   The lower court correctly found it was not a restrictive covenant.

The decree is affirmed, with costs to appellees.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and SOURIS, JJ., concurred.