CHRISTINE BUILDING COMPANY *v.* CITY OF TROY.

KLIPFEL *v.* SAME.

CAMPUS ESTATES, INC., *v.* SAME.

1. MUNICIPAL CORPORATIONS—ZONING—REASONABLENESS OF ORDI-
NANCE.

The reasonableness of a zoning restriction must be tested ac-
cording to existing facts and conditions and not some condition
which might exist in the future.

2. SAME—ZONING—POLICE POWER.

Zoning regulations constitute a valid exercise of the police power
only when they have a rational relation to the public health,
safety, welfare and prosperity of the community and are not
such an unreasonable exercise of the police power as to become
arbitrary, destructive, or confiscatory, a test to be applied
in the light of existing conditions.

3. SAME—ZONING ORDINANCE—PRESUMPTIONS.

The determination of the reasonableness of a zoning ordinance
must be made upon the facts presently involved, there being
a presumption in favor of validity.

4. SAME—ZONING ORDINANCE—CONSTITUTIONALITY.

A zoning ordinance may not be held invalid unless the objections
urged on constitutional grounds appear on the face of the meas-
ure in question, or are established by competent proof.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Zoning §§ 21, 22.
[2] 58 Am Jur, Zoning § 14.
[3] 58 Am Jur, Zoning § 16.
[5] 58 Am Jur, Zoning § 26.
[6] 3 Am Jur, Appeal and Error § 815.
[7, 8] 3 Am Jur, Appeal and Error § 912.
[9, 10] 58 Am Jur, Zoning § 52.
[13] 14 Am Jur, Costs § 91 *et seq.*

5. SAME—ZONING ORDINANCE—PUBLIC HEALTH, SAFETY, AND GENERAL WELFARE.

   A zoning ordinance, to be justified, must have advanced the public health, safety, and general welfare of the people.

6. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW.

   The Supreme Court hears and considers chancery cases *de novo* on the record on appeal.

7. SAME—CHANCERY CASES—FINDINGS OF TRIAL COURT.

   The Supreme Court gives considerable weight to the findings of the trial judge in equity cases primarily because he is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity.

8. SAME—CHANCERY CASES—FINDINGS OF TRIAL COURT.

   The Supreme Court will not ordinarily disturb the findings of the trial judge in an equity case unless, after an examination of the entire record, it reaches the conclusion that it would have arrived at a different result had it been in the position of the trial court.

9. MUNICIPAL CORPORATIONS—ZONING ORDINANCE—MINIMUM LOT SIZE.

   Finding of trial judge in suit to declare city zoning ordinance void as to plaintiffs' tracts because unreasonable and void, where it provided for minimum area per lot of 1/2 acre, *held,* correct under record presented.

10. SAME—ZONING—MINIMUM LOT SIZE—PUBLIC HEALTH, SAFETY, AND GENERAL WELFARE.

    Imposition of minimum size of 1/2 acre upon lots in zone which included plaintiffs' tracts that were in an area serviced by sewers *held,* not to bear a reasonable relation to any present danger directly affecting the public health, safety, and general welfare.

11. SAME—ZONING ORDINANCES—REASONABLENESS.

    The power granted municipalities to enact zoning ordinances is at all times limited by the word *reasonable.*

12. SAME—ZONING—CLASSIFICATION NOT PRESENTLY IMPOSED.

    A court has no legal duty, right, or obligation to undertake to pass on the reasonableness of the purpose of zoning plaintiffs' property with reference to a classification not presently imposed thereon.

13. Costs—Neither Party Prevailing in Entirety.

No costs are allowed on appeal in suit to declare a zoning ordinance invalid as to plaintiffs' tracts and on their cross appeal to have the court pass upon the validity of a classification not presently imposed thereon, where neither party has prevailed in the entirety.

Kelly, Souris, and Adams, JJ., dissenting.

Appeal from Oakland; Holland (H. Russel), J. Submitted January 5, 1962. (Docket Nos. 38–40. Calendar Nos. 49,335–49,337.) Decided September 10, 1962.

Bill by Christine Building Co., Inc., a Michigan corporation, against the City of Troy, a municipal corporation, to declare zoning ordinance void as to its property because of excessive area restriction, and praying for injunction restraining enforcement of any other than a particular and less restrictive zoning classification. Similar bills by Mae Klipfel and Campus Estates, Inc., a Michigan corporation. Causes consolidated for hearing and on appeal. Decree for plaintiffs declaring ordinance void as to plaintiffs' properties but denying declaratory relief. Defendant appeals. Plaintiffs cross-appeal. Affirmed.

*N. L. Smokler* (*Travis, Warren & Nayer,* of counsel), for plaintiffs.

*Burke & Osgood* (*Stanley E. Burke,* of counsel), for defendant.

*Amicus Curiae:*

*Irvin H. Yackness,* for Building Association of Metropolitan Detroit.

Kavanagh, J. Defendant city appeals from a decree of the circuit court for the county of Oakland

holding void as to the plaintiffs' property a provision in defendant city's zoning ordinance pertaining to a lot size restriction of 21,780 square feet as unreasonable and not in any way related to the general welfare of the community.

Plaintiffs cross-appeal with reference to a particular provision of the decree wherein the court refused to pass upon the question of minimum lot sizes other than that specified in the ordinance of 21,780 square feet, on the theory this was a legislative function and the court would only have the right to pass on the ordinance after it had been adopted by the legislative body.

The 3 cases were consolidated for trial below because they involved similarly situated lands and the same basic issues.

Plaintiffs Christine Building Company, Inc., and Mae Klipfel each own contiguous 40-acre parcels of land. Another parcel of land is involved containing 120 acres owned by the third plaintiff, Campus Estates, Inc. This latter parcel is not adjacent to the 2 parcels owned by the other plaintiffs but is located about a mile away. All plaintiffs are desirous of developing their property for residential purposes.

The 3 suits involved are an attack on the constitutionality, the legality, and the reasonableness of defendant city's Ordinance No 23 because of the lot size restrictions imposed on plaintiffs' property by article 14* of the ordinance.

---

\* The pertinent portion of article 14 of Ordinance No 23 of the city of Troy, the schedule of regulations, limiting height and bulk of buildings and land use, reads as follows:

| Use District | | Minimum Size Lot Per Unit | |
|---|---|---|---|
| | | Area in sq. ft. | Width in feet |
| R–1A | One-Family Residential | 30,000 | 150 |
| R–1B | One-Family Residential | 21,780 | 110 |
| R–1B1 | One-Family Residential | 15,000 | 100 |
| R–1C | One-Family Residential | 10,500 | 85 |
| R–1D | One-Family Residential | 8,500 | 75 |
| R–1E | One-Family Residential | 7,500 | 60 |

The parcels of land involved are zoned under the ordinance as R–1B. This zoning regulation requires that each lot have a half acre or 21,780 square feet with a width of 110 feet. Plaintiffs, who have sought to have their property rezoned, contend they should be permitted to use their property as R–1D, which permits lots to contain only 8,500 square feet with a width of 75 feet.

The plaintiffs in essence say:

1. There is no public necessity for their property being platted in lots the size required in the R–1B classification.

2. That the present zoning restrictions on their property result economically in the ordinance being confiscatory and unreasonable.

3. That the ordinance is unconstitutional because the lot size requirements are not related to health, safety, or general welfare and exceeds a proper exercise of the police power.

4. That the city has no right under the laws of this State to arbitrarily use zoning to control the population and maintain or improve property values or aesthetics, except as an incidental result of protecting directly the health, safety, and welfare of the community.

Defendant city of Troy contends that Ordinance No 23 is a valid exercise of its police powers.

The real crux of defendant's position is that Ordinance No 23 tends to limit the density of the population in proportion to the sewer capacity of the Evergreen interceptor system, which serves the area. Defendant contends this relationship between ultimate population and the sewer facilities directly involves the matter of health. Defendant urges that its right to have its inhabitants use the Evergreen interceptor sewer system is limited by contract and cannot be altered.

Defendant further maintains that the zoning plan of the city of Troy is a comprehensive one based upon a master plan and that any comprehensive plan must have a graduated lot size to accommodate people with different tastes and different pocketbooks. Defendant says the character of the neighborhood adjacent to and surrounding the 3 subject parcels is of such a nature that lots having a size of only 8,500 square feet would not be harmonious with the area to the east and south of the two 40-acre parcels or with the area to the west of the 120-acre parcel.

In substance, the city says it adopted a sewer plan for the general area to serve an estimated population of 21,300 people in the year 2000 A.D. The city then zoned so as to limit the area to that figure.

Testimony disclosed there were presently only about 2,000 persons in the sewer district.

Defendant city contends its testimony and exhibits support the following:

1. The present zoning of the subject parcels would create the maximum density of population that could be serviced by available sanitary sewers, and, therefore, bears a direct relation to the public health, safety, and general welfare.

2. The comprehensive zoning plan of the city of Troy, as evidenced by Ordinance No 23 and as applied to the parcels in question, constitutes a valid exercise of the police power and bears a substantial relation to the public health, safety and general welfare.

3. The present zoning, as applied to the subject parcels, tends to preserve the established character of the neighborhood, stabilizes the value of property therein and promotes the general welfare.

4. Operation of the zoning ordinance as applied to plaintiffs' property does not render it worthless or almost worthless.

5. Where the court has decided that a provision of a municipal zoning ordinance governing the minimum lot size is unreasonable and, therefore, void, it does not then have the right to impose upon the subject parcel a smaller minimum lot size.

Defendant's exhibit A is a contract between the city of Detroit and the county of Oakland. The total amount of sewage (or volume per cubic foot per second) to be received by the city of Detroit from the Evergreen interceptor was regulated by the contract between Oakland county and the city of Detroit. The designed capacity of the interceptor was fixed by the terms of the Evergreen sewage disposal system agreement (exhibit B) between the county of Oakland, the city of Troy, and other participating municipalities.

The Evergreen contract established Troy's maximum population to be served at 21,300 people. According to the terms of the contract and because of the designed capacity of the sewer, a population of 21,300 people is the maximum population that could be served by the interceptor within the city of Troy.

The trial court found from the testimony and from the exhibits:

It would not be economical, from the standpoint of the developer, to build on building sites on these 3 properties on lots 1/2 acre in size, if the homes are to be sold at popular prices, meaning from $17,000 to $20,000.

Homes in the 3 parcels built on lots having a minimum size of 21,780 square feet and costing $25,000 and upwards would be in an extremely poor competitive position with houses selling at the same figure in nearby areas or developments, and would not meet with ready sales.

It is obviously desirable on the part of the plaintiffs to realize as much profit out of their land as possible and, subject to this desire, they would like

to build on lots having not more than 8,500 square feet. It was agreed where septic tanks were necessary, the building sites needed to be larger than if serviced by a sewer system.

The trial court found as a fact that within the city of Troy other areas using septic tanks adjacent to plaintiffs' property had much smaller lot sizes than those permitted under Ordinance No 23.

The trial court further found the reduction from 21,780 square feet to 8,500 square feet would not only result in a great economic and financial gain to the land developers, but in a greatly increased burden upon the land because of population and services that would be required. The trial court found although plaintiffs' profits from the land would be greatly curtailed, it could not be said the imposition of the minimum lot size of 21,780 square feet would amount to outright confiscation of the land.

The trial court failed to find a relationship between the lot size restriction and any present consequential effect on the public health, safety, and general welfare, and concluded the 21,780-square-foot lot size was a void provision as to the plaintiffs.

The trial court stated the city had no right to arbitrarily use zoning to control population and to maintain and improve property values or aesthetics, except as an incidental result of directly protecting public health, safety, and general welfare.

The court concluded, under the facts in this case and the law applicable thereto, the zoning restriction of a minimum lot size of 21,780 square feet was unreasonable, discriminatory, and not related to the protection of health, safety, and general welfare, and thus not within the power of defendant city to enforce as relates to the subject property.

The trial court went on to say it was of the opinion there devolved upon it no legal duty, right, or obligation to switch from the role of chancellor to that of

municipal legislator for the purpose of rezoning the subject property, and refused to pass on the question of whether a minimum lot size of 8,500 square feet was reasonable.

Our courts have consistently held that the reasonableness of a zoning restriction must be tested according to existing facts and conditions and not some condition which might exist in the future. See the discussion in *Comer* v. *City of Dearborn,* 342 Mich 471, 477, where Justice CARR quotes from the case of *Corthouts* v. *Town of Newington,* 140 Conn 284, 288 (99 A2d 112, 38 ALR2d 1136), as follows:

" 'Zoning regulations constitute a valid exercise of the police power only when they have a "rational relation to the public health, safety, welfare and prosperity of the community" and are "not such an unreasonable exercise of [the police] power as to become arbitrary, destructive or confiscatory." *State* v. *Hillman,* 110 Conn 92, 100, 105 (147 A 294). Whether a zoning ordinance meets this test must be determined in the light of existing conditions, in order that the purpose for which the police power is invoked may be promoted. *Village of Euclid* v. *Ambler Realty Co.,* 272 US 365, 387 (47 S Ct 114, 71 L ed 303, 54 ALR 1016).' "

This Court has held on numerous occasions that in determining the reasonableness of a zoning ordinance each case must be determined upon its own facts. See *Senefsky* v. *City of Huntington Woods,* 307 Mich 728 (149 ALR 1433); *Hitchman* v. *Township of Oakland,* 329 Mich 331; *Hungerford* v. *Township of Dearborn,* 362 Mich 126.

In the case of *Hitchman* v. *Township of Oakland,* 329 Mich 331, Justice CARR outlined some of the ground rules for testing the actions of a legislative body with reference to the reasonableness of a zoning ordinance. Justice CARR said (p 335):

"Under the act, arbitrary action or the unreasonable exercise of authority may not be justified. A zoning ordinance must be reasonable in its operation. This is the test of its legality. *City of North Muskegon* v. *Miller,* 249 Mich 52, 57; *Moreland* v. *Armstrong,* 297 Mich 32, 36. Every case of this character must be determined on its own facts. *Senefsky* v. *City of Huntington Woods,* 307 Mich 728, 737 (149 ALR 1433). The presumption is in favor of validity. A statute or ordinance may not be held invalid unless the objections urged on constitutional grounds appear on the face of the measure in question, or are established by competent proof. *Portage Township* v. *Full Salvation Union,* 318 Mich 693; *Northwood Properties Company* v. *Royal Oak City Inspector,* 325 Mich 419."

In the instant case, the population in the area involved presently amounts to 2,051. The city anticipates that by the year 2000 it will exceed 21,300. If we are going to speculate as to the future we might well recognize the possibilities of technological advances with reference to sewage disposal. By the year 2000 the city might find itself able to handle and service a population much greater than the 21,300 limitation.

Though each zoning case stands by itself and the reasonableness of the zoning must be judged by the circumstances of the case, in the final analysis, we must consider whether the particular provisions of the zoning law have advanced the public health, safety, and general welfare of the people. See *Pere Marquette R. Co.* v. *Muskegon Township Board,* 298 Mich 31.

We hear and consider chancery cases *de novo* on the record on appeal. *Johnson* v. *Johnson,* 363 Mich 354; *Osten-Sacken* v. *Steiner,* 356 Mich 468; *Futernick* v. *Cutler,* 356 Mich 33; *A & C Engineering Co.* v. *Atherholt,* 355 Mich 677; *Straith* v. *Straith,* 355

Mich 267; *Ball* v. *Sweeney,* 354 Mich 616. This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases. This is primarily because the trial judge is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity. We do not ordinarily disturb the findings of the trial judge in an equity case unless, after an examination of the entire record, we reach the conclusion we would have arrived at a different result had we been in the position of the trial judge. The trial judge here found, after listening to the witnesses testify and examining the exhibits, that the plaintiffs had shown the zoning ordinance to be unreasonable and arbitrary. After an examination of the entire record, we feel the trial judge reached a correct conclusion.

The limitation placed upon the city of Troy with reference to the Evergreen interceptor sewer can be changed by negotiation with the other municipalities. Self-imposed limitations by the city fathers cannot be considered as a restraint on their ability to further contract in the future.

A municipality might reasonably use zoning to control population when there is a present danger directly affecting the public health, safety, and welfare. However, the record in this case does not disclose such a situation. The city admits there are 8,500-square-foot lots in areas where sewers do not exist and are considered safe for a part of the city of Troy. Is it reasonable, then, when part of the city of Troy is without sewers, to contend health and safety demand 21,780-square-foot lots on plaintiffs' property where a present sewer system exists?

The power granted municipalities to enact zoning ordinances is at all times limited by the word "reasonable." There can be no question that in the in-

terest of the public health, safety, and general welfare, the municipality has authority to adopt a proper zoning ordinance; but in adopting any ordinance it must meet the test of reasonableness. The ordinance here involved fails to meet such a test so far as its application to plaintiffs' property.

We agree with the trial court that he has no legal duty, right, or obligation to undertake to pass, under the present record, on the reasonableness of the purpose of zoning the plaintiffs' property with reference to the 8,500-square-foot classification. It will be time enough for the court to review this matter if and when the municipal legislative body has rezoned plaintiffs' property.

The decree of the lower court is affirmed. Neither party having prevailed in the entirety, neither shall have costs.

CARR, C. J., and DETHMERS, BLACK, and OTIS M. SMITH, JJ., concurred with KAVANAGH, J.

ADAMS, J. (*dissenting*). The question in this case is the extent to which a city may fix minimum lot sizes in residential areas as a part of its overall city plan.

The city of Troy has a total area of 32-1/2 square miles of which approximately 28 square miles are residential. A young city, it was incorporated in 1955.

Pursuant to PA 1931, No 285, § 6 (CL 1948, § 125.36 [Stat Ann 1958 Rev § 5.2996]), Troy recently formulated a city master plan. The statute provides that the plan shall contain the following:

"Such plan, with the accompanying maps, plats, charts, and descriptive matter shall show the commission's recommendations for the development of said territory, including, among other things, the general location, character, and extent of streets,

viaducts, subways, bridges, waterways, water fronts, boulevards, parkways, playgrounds and open spaces, the general location of public buildings and other public property, and the general location and extent of public utilities and terminals, whether publicly or privately owned or operated, for water, light, sanitation, transportation, communication, power, and other purposes; also the removal, relocation, widening, narrowing, vacating, abandonment, change of use or extension of any of the foregoing ways, grounds, open spaces, buildings, property, utilities or terminals; the general location, character, layout and extent of community centers and neighborhood units; and the general character, extent and layout of the replanning and redevelopment of blighted districts and slum areas; *as well as a zoning plan for the control* of the height, *area, bulk,* location, and use of buildings and premises." (Emphasis supplied.)

CL 1948, § 125.37 (Stat Ann 1958 Rev § 5.2997), further provides:

"In the preparation of such plan the commission shall make careful and comprehensive surveys and studies of present conditions and future growth of the municipality and with due regard to its relation to the neighboring territory. The plan shall be made with the general purpose of guiding and accomplishing a coordinated, adjusted, and harmonious development of the municipality and its environs which will, in accordance with present and future needs, best promote health, safety, morals, order, convenience, prosperity, and general welfare, *as well as efficiency and economy in the process of development;* including, among other things, adequate provision for traffic, the promotion of safety from fire and other dangers, adequate provision for light and air, *the promotion of the healthful and convenient distribution of population,* the promotion of good civic design and arrangement, *wise and efficient expenditure of public funds,* and the adequate provision of

public utilities and other public requirements."
(Emphasis supplied.)

Troy's city plan was prepared by Vilican-Leman & Associates, Inc., a firm of city planners, that has done municipal planning for many communities including the cities of Hamtramck, Highland Park, Port Huron, Birmingham, and St. Clair Shores. George Vilican, the head of that firm, who testified for defendant city, was conceded to be eminently qualified in this field.

The master plan for the city was made up of 3 areas—the industrial, the commercial, and the residential. The plan took into account not only Troy but also the adjacent communities of Pontiac, Avon township, Shelby, Bloomfield township, Bloomfield Hills, Sterling, Southfield, Warren, Madison Heights, Royal Oak, Berkley, Huntington Woods, Oak Park, Ferndale, and Hazel Park. Every portion of the master plan was presented to the public and was adopted by the city planning commission and the city commission.

George Skrubb, who has taught planning at Harvard University, worked as a city planning engineer and who is now Oakland county planning director and a full member of the American Institute of Planners, testified for the city. He specifically approved the methods that were followed in preparing the plan by the city planners for the city of Troy.

Both the master plan and the zoning ordinance adopted pursuant to it are based upon the theory that, in addition to the major component parts of a city, planning is necessary in terms of schools, parks, sewers, roads, water supply and other facilities. The plan for the city of Troy is based upon an ultimate population of 134,000 people. The city had a population of 19,382 on May 10, 1961.*

---

* Mr. Justice Kavanagh's opinion refers to 2,000 persons in the sewer district at present and 21,300 persons by 2000 A.D.

Mr. Vilican testified that if there was to be a greater population density than that presently planned for, then adequate provision has not been made for various facilities that will be needed in the future such as parks and schools. He also testified that the roads as now planned would be inadequate to carry the additional burdens which would be created. By following the master plan, he testified that there would be an orderly development of the community. Waste would be avoided. Condemnation and the tearing down of buildings to create sites for public facilities that would be needed but that are not now planned for would be unnecessary.

While the basic plan for the community looks to completion between the years 1980 and 2000, the plan would be subject to review from time to time and replanning could be done if the same seemed to be indicated. The planning period for the city which has been used is the comparatively short period of from 20 to 40 years—less than the time allowed for the amortization of many buildings.

The overall residential plan calls for lots ranging from 30,000 square feet down to 8,500 square feet. At the time when plaintiffs purchased their properties, they knew that the properties were zoned for residential lots of 21,780 square feet. Out of a total of 28 square miles of the city used for residential purposes, 16.2 miles are zoned for residential lots of 15,000 feet or less.

No testimony was offered in opposition to the city master plan or to the general zoning ordinance which was adopted pursuant to it. Authority for the zoning ordinance is to be found in PA 1921, No 207, relating to city or village districts or zones, section 1 of which, being CL 1948, § 125.581 (Stat Ann 1958 Rev § 5.2931), reads in part:

"Such regulations shall be made in accordance with a plan designed to lessen congestion on the public streets, to promote public health, safety and general welfare, and shall be made with reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the general trend and character of building and population development."

Plaintiffs attack the zoning of their properties to a minimum lot size of 21,780 square feet as unreasonable and ask this Court to rule that a minimum lot size of 8,500 square feet is reasonable because a dwelling can be built on such a lot without creating any health hazard as long as sewer facilities are available.

The zoning ordinance does not have the effect of confiscating the properties of the plaintiffs. Robert J. Silberstein, builder, developer, and secretary of Christine Building Co., Inc., and Campus Estates, Inc., testified that if the lot areas were reduced to 8,500 square feet, a profit of $100,000 could be realized from the land development. He envisioned the sale of at least 50 homes a year in a subdivision of 100 lots. But, when asked if it would be possible to build on the land as now zoned and recoup the investment which had been made, he stated he thought this was possible.

There is no evidence that, in setting up the zoning plan for the city of Troy, plaintiffs' properties were dealt with unfairly or arbitrarily in terms of the overall plan for the city. Other subdivisions in the immediate area of plaintiffs' properties are zoned for 30,000-square-foot lots. According to the testimony of developers of those subdivisions, the lots are being built upon and the properties sold, though admittedly not at the rate of 50 lots per 100-lot-subdivision per year.

In addition to taking into account the general character of the area, plaintiffs' lots were also so zoned because of the limitations of the area in terms of sewer capacity. These limitations are self-imposed and might be removed, though only with great difficulty. The present sewer project for the area is the result of a county-wide planning program involving many communities. The construction of additional sewers at this time by the city of Troy alone would not be economically feasible. It required the combined efforts over a period of years of the cities of Troy, Birmingham, Bloomfield Hills, Southfield, Lathrup Village, village of Westwood, and the townships of Bloomfield and Pontiac to negotiate and accomplish the construction of the Evergreen sewer and arrange for the city of Detroit to handle the sewage from it. If plaintiffs' properties are reduced as to minimum lot size, and as a consequence the planned sewer capacity for the area is pre-empted, then other properties in the area that are conforming to the city plan will inevitably lack sewer facilities. If the present zoning must be altered by a holding that it is unreasonable, then a point of attack upon the city has been established whereby any subdivider will be able to abrogate the city's residential zoning program except as to an absolute minimum lot size. A cancerous situation will result which will permit almost any city plan to be destroyed piecemeal without any examination or consideration of the overall city plan, even though the reasonableness of such plan has been virtually conceded by the failure of the plaintiffs to present any testimony in opposition thereto. See *Brae Burn, Inc.*, v. *City of Bloomfield Hills*, 350 Mich 425, 436.

The criteria used by the city for lot size within various areas of the city has been the general character of the neighborhood, the facilities available, or to be made available. The criteria contended for by

the plaintiffs is the absolute minimum in terms of sanitation, salability and profitability, regardless of whether or not there is a resulting depreciation in the neigborhood and in adjacent properties, and regardless as to whether or not there are any problems created in terms of traffic hazards, school congestion, inadequate water supply, or otherwise. If problems develop in these areas, this is no concern of plaintiffs. If more schools are needed, or more sewers, or more roads, they *can* be built even though as a financial matter they may be completely unfeasible. This will be a proper concern not for these plaintiffs, who will long since have "developed" the properties, but for the purchasing homeowners who have been left holding the tax bag.

Whether or not the city of Troy has developed a reasonable plan for that city, or the plan is faulty, is not the question here at issue. The undisputed facts are that the city under expert, professional engineers has planned its future as best it could, in the light of present knowledge, full well realizing that such a plan may have to be altered and that it may not succeed as now envisioned. With a population of 19,000, Troy made plans for a city of 134,000. All economic groups are afforded an opportunity to share in the growth and the life of the city. Under these circumstances, it cannot be said that the city has gone beyond the powers and authority conferred upon it by the legislature of this State under the city planning act and the city zoning act.

Support for the views herein expressed can be found in the cited statutes and in the recent cases of *Northwood Properties Co.* v. *Royal Oak City Inspector,* 325 Mich 419; *Scholnick* v. *City of Bloomfield Hills,* 350 Mich 187, and *Brae Burn, Inc.,* v. *City of Bloomfield Hills, supra.* The critical question is whether or not a municipality may make plans for its future as an organic whole. Or is any such

planning subject to destruction because a property viewed separately, even though it is an integral part of that whole, would create no immediate hazard to health and welfare if developed with minimum lot sizes. In my opinion, the general welfare would best be served by orderly planning and zoning by the body corporate. Restrictions as to lot size are no more outside the bounds of local legislative discretion than the zoning of one area for factories to the exclusion of a residential use. *Lamb* v. *City of Monroe,* 358 Mich 136.

I would reverse the decision of the trial judge and dismiss the plaintiffs' bill of complaint.

KELLY and SOURIS, JJ., concurred with ADAMS, J.