*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TOLLBROOK, LLC,

Plaintiff-Appellant,

v

CITY OF TROY,

Defendant-Appellee.

UNPUBLISHED
May 13, 2025
10:27 AM

No. 368634
Oakland Circuit Court
LC No. 2020-181893-CZ

TOLLBROOK WEST, LLC,

Plaintiff-Appellant,

v

CITY OF TROY,

Defendant-Appellee.

No. 368635
Oakland Circuit Court
LC No. 2020-181895-CZ

Before: M. J. KELLY, P.J., and SWARTZLE and ACKERMAN, JJ.

PER CURIAM.

In this case, plaintiffs claim that the land use regulations imposed by defendant City of Troy burden their property to such a degree that they constitute a regulatory taking under Const 1963, art 10, § 2. The trial court rejected that claim, and we affirm.

## I. FACTS

Safet Stafa owns the plaintiff businesses Tollbrook, LLC and Tollbrook West, LLC. Each business owns real property in the City of Troy. Though near Big Beaver Road, the parcels do not front it and have been zoned "R-1B" (single-family residential) since the 1960s. Plaintiffs seek to rezone their properties to "BB"—a reference to its name, the "Big Beaver" district—so they may pursue a broader array of uses. The City of Troy's master plan, adopted under the Michigan

-1-

Planning Enabling Act, MCL 125.3801 *et seq.*, designated plaintiffs' properties for future inclusion in the BB district.[1]

Although the course of dealings between plaintiffs and the City of Troy extends further back, the relevant timeline begins in February 2019, when plaintiffs submitted "straight" (non-conditional) rezoning applications. Consistent with the master plan, they asked to be placed in the BB district. The City of Troy's ordinance requires that "[t]he proposed use of the property shall be indicated on the application," Troy Code, ch 39, § 16.03(B)(7), but both applications stated that no specific development was planned at that time and that market research would determine what uses were "feasible." Plaintiffs attached preliminary sketches of three-story mixed-use and apartment buildings, but because these were not conditional rezoning requests under MCL 125.3405(1), the illustrations did not bind the applicants to a particular use.

In May 2019, the City Planning Commission voted to recommend denial of the rezoning requests. At a City Council meeting in July, nine individuals spoke in opposition to the rezoning during the public comment period. The Council then voted 7-0 to adopt a resolution denying the rezoning requests, citing the absence of a proposed use and potential incompatibility with neighboring single-family residential lots.[2]

Following that denial, plaintiffs filed separate lawsuits asserting two claims: denial of substantive due process and a regulatory taking. The City of Troy removed the cases to federal court, but they were promptly remanded after the court concluded that plaintiffs raised only state constitutional claims. On remand, the trial court granted summary disposition to the City of Troy under MCR 2.116(C)(8) on the substantive due process claims[3] but denied it on the regulatory takings claims and allowed discovery to proceed. After discovery, the City of Troy again moved for summary disposition—this time under MCR 2.116(C)(10)—and the trial court granted it. Plaintiffs now appeal.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). In evaluating a motion under MCR 2.116(C)(10), courts "consider[] affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion," and may grant summary disposition if that

---

[1] During the pendency of this appeal, the City of Troy amended its Future Land Use map to remove the subject properties from the area designated for future inclusion in the BB district.

[2] Plaintiffs also object to a protest petition that was filed under MCL 125.3403(1). If properly supported, that petition would have required a two-thirds vote of the City Council to approve the rezoning request. See Troy Code, ch 39, § 16.06. Plaintiffs contend the petition lacked sufficient signatures. However, because the City Council unanimously denied the request, the validity of the protest petition has no bearing on our analysis.

[3] The present appeal does not challenge the trial court's dismissal of the substantive due process claim.

evidence "show[s] that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The rule uses a burden-shifting system:

> In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Id*. at 362-363 (citations omitted).]

To the extent this case involves the interpretation of statutes or ordinances, those issues are reviewed de novo. *Ford Motor Co v Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006).

## III. ANALYSIS

The trial court held that there was no genuine issue of material fact that the City of Troy's land use regulations did not effect a taking of plaintiffs' property. We agree.

In *K & K Constr, Inc v Dep't of Natural Resources*, 456 Mich 570, 576-577; 575 NW2d 531 (1998), our Supreme Court employed the federal framework for evaluating regulatory takings under the Michigan Constitution. Likewise, the parties here agree that the appropriate standard is the balancing test articulated in *Penn Central Transp Co v City of New York*, 438 US 104; 98 S Ct 2646; 57 L Ed 2d 631 (1978). That test requires courts to "engage in an 'ad hoc, factual inquiry,' centering on three factors: (1) the character of the government's action, (2) the economic effect of the regulation on the property, and (3) the extent by which the regulation has interfered with distinct, investment-backed expectations." *K & K Constr*, 456 Mich at 577, citing *Penn Central*, 438 US at 124 (cleaned up).

At the outset, plaintiffs face a critical deficiency on the second factor, economic impact. In their briefing, plaintiffs merely assert that "the City cannot seriously dispute" that rezoning would make their property "much more valuable" than limiting it to single-family housing. That may be true in the abstract: a property would not become *less* valuable by allowing its owners to use it in more ways. But the *Penn Central* inquiry requires more than logical assumptions—it requires evidence:

> A property owner must provide some evidence of economic injury in order to succeed on the merits of a regulatory takings claim under the Penn Central test. The courts often decline to find any regulatory taking if the property owner continues using the property for some economic use despite the challenged restrictions. . . . The denial of a discretionary land use approval may effect an unconstitutional taking if it renders the property essentially unusable or economically valueless. If reasonable uses of the property still exist without the

variance, however, the courts will reject a regulatory takings claim. [2 Salkin, American Law of Zoning (5th ed), § 16:13 (footnotes omitted).]

Indeed, *Penn Central* itself expressly referenced a case—with apparent approval—in which an 87.5% diminution of value was not deemed a taking. See *Penn Central*, 438 US at 131, citing *Hadacheck v Sebastian*, 239 US 394; 36 S Ct 143; 60 L Ed 348 (1915). Here, plaintiffs offer no evidence—no appraisal report, no market analysis, no expert affidavit—that would allow a court to weigh the extent of the economic impact. Lacking any such evidence, this factor weighs heavily against plaintiffs.

As to the first factor—the character of the government's action—plaintiffs point to no physical occupation or forced dedication of land. Instead, the City of Troy has simply declined to rezone property that has been zoned for single-family residential use since the 1960s. "[T]he courts are unlikely to find any regulatory taking when the action can be characterized as a garden-variety zoning law or another sort of traditional land use regulation." Salkin, § 16:15. As the Supreme Court explained: "A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central*, 438 US at 124 (citation omitted). At bottom, regulatory takings cases aim "to identify regulatory actions that are functionally equivalent to the classic taking in which the government directly appropriates private property or ousts the owner from his domain." *Lingle v Chevron U.S.A., Inc*, 544 US 528, 539; 125 S Ct 2074; 161 L Ed 2d 876 (2005). This case does not fall within that category, and plaintiffs cite no cases holding that land zoned single-family residential constitutes a regulatory taking.

Finally, the third factor—the extent of interference with distinct, investment-backed expectations—at best offers plaintiffs only limited support. Plaintiffs rely on the City of Troy's Future Land Use map, which designated their parcels for future inclusion in the BB district, as the basis for their expectation that rezoning would follow. And it is understandable that the master plan's designation, combined with the properties' proximity to a commercial district and major highway, may have contributed to that expectation. But the structure of Michigan planning and zoning law makes clear that any such expectation would not be a certainty. Zoning ordinances are enacted under the Michigan Zoning Enabling Act, MCL 125.3101 *et seq*., while master plans are adopted under the Michigan Planning Enabling Act, MCL 125.3801 *et seq*. The statutes set out distinct processes for taking action under them, and while "[a] zoning ordinance shall be based upon a plan," MCL 125.3203(1),[4] there is no indication in either statute that changes to a master plan mandate corresponding changes to the zoning ordinance. Indeed, they cannot: a zoning ordinance must be adopted by a municipality's legislative body, MCL 125.3401(5), while a master

---

[4] A master plan adopted under the Michigan Planning Enabling Act is the type of plan upon which a zoning ordinance can be based. See MCL 125.3803(g)(*ii*).

plan can be approved by a planning commission alone, MCL 125.3843(2).[5] Plaintiffs' expectation that rezoning would follow as a matter of course lacks legal support. Moreover, they have not offered, for instance, testimony from another developer with experience in Troy indicating that such an expectation would have been reasonable.[6] As a result, this factor at most slightly favors plaintiffs—but not enough to overcome the weight of the other two factors.[7]

In sum, plaintiffs offered no evidence of the economic impact of the challenged regulation; the character of the government's action weighs against a taking; and while the extent of interference with investment-backed expectations may modestly support plaintiffs' position, it does not meaningfully tip the weight of an otherwise one-sided scale. Because the *Penn Central* factors do not support plaintiffs' claim, there is no genuine issue of material fact as to whether the City of Troy effected a taking. It did not. We therefore affirm the trial court's decision.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman

---

[5] Even if the legislative body reserves final approval authority over a master plan under MCL 125.3843(3), nothing in the statute suggests that approving a master plan has the effect of amending the zoning ordinance.

[6] Such evidence may have been difficult to produce. At one time, "the basic plan for the community look[ed] to completion between the years 1980 and 2000," *Christine Bldg Co v City of Troy*, 367 Mich 508, 522; 116 NW2d 816 (1962) (ADAMS, J., dissenting), under which "[t]he plan for the city of Troy [was] based upon an ultimate population of 134,000 people," *id*. at 521. With the City's estimated population as of July 1, 2023 being 87,339, see United States Census Bureau, *QuickFacts: Troy city, Michigan*, <https://www.census.gov/quickfacts/troycitymichigan> (accessed April 21, 2025), it would seem the City has not always rezoned consistently with its stated plan.

[7] Plaintiffs rely heavily on *Pulte Land Co v Alpine Twp*, unpublished per curiam opinion of the Court of Appeals, issued September 12, 2006 (Docket Nos. 259759 and 261199), to support their argument that the *Penn Central* factors have been satisfied. While we are not bound by unpublished opinions, see MCR 7.215(C)(1), we recognize that plaintiffs' focus on *Pulte* is understandable given its factual similarities. That said, we find *Pulte* unpersuasive. Central to its reasoning was that a mismatch between the zoning ordinance and master plan meant that "in the long term retaining [the existing zoning] would serve to *frustrate* the public good rather than serve it," *id*. at 6, and "Pulte would have been entirely reasonable in expecting the property to be rezoned for development upon request," *id*. at 6-7. As discussed above, that rationale misapprehends Michigan law. A master plan reflects long-term planning goals, not present entitlements. That a master plan anticipates future rezoning does not create an inference that rezoning must be granted on request. To hold otherwise would effectively elevate a master plan to the legal equivalent of a zoning ordinance, which it manifestly is not.